UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ALLERGAN, INC., ALLERGAN PHARMACEUTICALS, IRELAND UNLIMITED COMPANY, ALLERGAN USA, INC., and ALLERGAN SALES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> REVANCE THERAPEUTICS, INC., <br><br> Defendant. | CIVIL ACTION NO. 3:23-CV-00431 |

## MEMORANDUM IN SUPPORT OF DEFENDANT REVANCE THERAPEUTICS, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

*Of Counsel:*

James N. Boudreau
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Phone: (215) 988-7833
Fax: (215) 717-5209
Email: James.Boudreau@gtlaw.com

Gregory S. Bombard
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Phone: (617) 310-6000
Fax: (617) 310-6001
Email: gregory.bombard@gtlaw.com

Katie Molloy
Tennessee Bar No. 26877
Greenberg Traurig, P.A.
101 East Kennedy Boulevard
Suite 1900
Tampa, FL 33602
Phone: (813) 318-5710
Email: molloyk@gtlaw.com

**Attorneys For Defendant Revance Therapeutics, Inc.**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I. INTRODUCTION ......................................................................................................... 1

II. ALLEGATIONS OF THE COMPLAINT .................................................................... 2

    A.   Revance Offers A New Form Of Injectable Botulinum Neurotoxins And Dermal Fillers. .................................................................................................................. 2

    B.   Allergan's Complaint Accuses Revance of Misappropriation Of An Ill-Defined, Overbroad Swath Of Purported Trade Secrets, Seemingly Touching Allergan's Entire Business. ............................................................................................................. 3

    C.   Allergan's Complaint Fails To Allege Facts That Plausibly Suggest Revance Misappropriated Anything. ................................................................................... 4

    D.   Allergan Files A Pretextual Suit Against Revance. .............................................. 7

III. LEGAL STANDARD .................................................................................................. 8

IV. LEGAL ARGUMENT .................................................................................................. 9

    A.   The Complaint Fails To State a Claim Against Revance Because It Fails To Allege That Revance Misappropriated Any Purported Trade Secret. ................................ 9

    B.   Allergan's Complaint Fails To State A Claim Because It Fails To Identify Allergan's Purported Trade Secrets With Reasonable Particularity. ..................................... 13

V. CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................8, 9

*AssuredPartners of Oregon, LLC v. Reese*,
No. 6:22-cv-00673-MC, 2022 U.S. Dist. LEXIS 233618 (D. Or. Dec. 30, 2022) .......................12

*AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*,
No. 4:16-CV-01981, 2017 U.S. Dist. LEXIS 106188 (M.D. Pa. July 10, 2017) ..........................13

*Bayco Products v. Lynch*, No.
3:10-cv-1820-D, 2011 U.S. Dist. LEXIS 46163 (N. D. Tx. Apr. 28, 2011)................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................8

*Biomin Am., Inc. v. Lesaffre Yeast Corp.*,
No. 2:20-CV-02109-HLT, 2020 WL 2395200 (D. Kan. May 12, 2020) .....................................11

*B&L Corp. v. Thomas & Thorngren, Inc.*,
162 S.W.3d 189 (Tenn. App. Ct. 2004)................................................................14, 15

*Chumley v. Navistar, Inc.*,
No. 3:18-cv-0510, 2018 U.S. Dist. LEXIS 141766 (M. D. Tenn. Aug. 20, 2018).....................8, 9

*Ciena Communs., Inc. v. Nachazel*,
No. 09-cv-02845-MSK-MJW, 2010 U.S. Dist. LEXIS 90460
(D. Colo. Aug. 30, 2010) ..............................................................................10, 11, 12

*CommonSpirit Health v. HealthTrust Purchasing Group, L.P.*,
No. 3:21-cv-00460, 2022 U.S. Dist. LEXIS 81688 (M. D. Tenn. May 5, 2022) ..........................9

*Courtright v. City of Battle Creek*,
839 F.3d 513 (6th Cir. 2016) ................................................................................8

*Eidson v. State of Tennessee Dept. of Children's Services*,
510 F.3d 631 (6th Cir. 2007) ................................................................................9

*Enchant Christmas Light Maze & Market, Ltd. v. GlowCo LLC*,
No. 3:19-cv-00966, 2019 U.S. Dist. LEXIS 19660 (M. D. Tenn. Nov. 13, 2019)...................9, 10

*Hinson v. O'Rourke*, No. M201400361COAR3CV,
2015 WL 5033908 (Tenn. Ct. App. Aug. 25, 2015) .................................................................15

*Jobscience, Inc. v. CVPartners, Inc.*,
No. C 13-04519 WHA, 2014 U.S. Dist. LEXIS 64350 (N.D. Cal. May 1, 2014) ........................13

*M/A-COM Technology Solutions, Inc. v. Litrinium, Inc.*,
SACV 19-220 JVS (JDEx), 2019 U.S. Dist. LEXIS 212479
(N. D. Cal. Sep. 23, 2019) ...............................................................................................11, 12

*NextPay, Inc. v. Comdata Network, Inc.*,
2018 WL 4185374 (M.D. Tenn. Aug. 30, 2018) ......................................................................13

*Rezult Group, Inc. v. Turkheimer*,
2023 WL 1975239 (M.D. Tenn. Feb. 13, 2023) ..................................................................11, 12

*Russell v. Killian*,
No. 3:22-cv-00574, 2023 U.S. Dist. LEXIS 33945 (M. D. Tenn. Mar. 1, 2023) ..........................9

*Western Excelsior Corp. v. Propex Operating Co., LLC*,
No. 1:16-cv-506, 2017 U.S. Dist. LEXIS 227496 (E. D. Tenn. Sep. 6, 2017) ..........................13

*Wright Med. Tech., Inc. v. Paragon 28, Inc.*,
No. 18-CV-00691-PAB-STV, 2019 WL 4751807 (D. Colo. Sept. 30, 2019) .............................11

**Statutes**

18 U.S.C. § 1839(3) ...........................................................................................................14

Tenn. Code. Ann. §§ 47-25-1702(1) ......................................................................................10

TN Code § 47-25-1702(4) ....................................................................................................14

# I. INTRODUCTION

Plaintiffs (collectively referred to in the Complaint as "Allergan") raced to the courthouse to file this case just days after Defendant Revance Therapeutics, Inc. ("Revance") announced it received certain regulatory approvals that would allow it to significantly bolster its production of Daxxify®, a new form of injectable botulinum neurotoxin ("BoNT"). Daxxify represents a significant threat to a well-known BoNT product offered by Plaintiffs – Botox. Indeed, as Plaintiffs know, public reports show Daxxify, which only received FDA regulatory approval in September 2022, is off to a strong start, generating positive feedback and strong, early uptake. Eager to stave off Revance's growth, Allergan's Complaint conjures nonsensical and unsupported claims of trade secret misappropriation against Revance based on a series of overblown, defamatory allegations about Allergan's former employees, many of whom have not worked for Allergan in years and/or worked at other pharmaceutical companies in the interim. Thus, a close reading reveals the Complaint for what it is: an anticompetitive attempt by Allergan to preserve its place in the market for injectable botulinum toxin therapies.

Despite Allergan's efforts, the Complaint fails to allege sufficient facts to state a valid claim against Revance. First, Allergan's Complaint conspicuously does not allege misappropriation of any purported trade secret *by Revance*. The Complaint attempts to imply that some Allergan departing employees might have retained Allergan information, but it does not actually allege *Revance* improperly obtained or used that information.[1] Numerous federal district courts, both in this district and elsewhere, have ruled that allegations like the ones in Allergan's

---

[1] Although Allergan specifically accuses certain former employees of improper conduct, it notably does not name them as defendants. Allergan's public smearing of its former employees while not actually naming them as defendants (which would afford them an opportunity to defend themselves) is a mere device; an overt message to Allergan's current employees that should they choose to go to work for Revance, they too will be unjustifiably maligned under the protections of judicial privilege.

Complaint are insufficient to state a claim for trade secret misappropriation against a new employer. Merely alleging a defendant hired the plaintiff's former employees, even when the plaintiff also alleges the individual employees misappropriated the plaintiff's trade secrets, does not state a valid claim for trade secret misappropriation against the new employer. The Court should therefore dismiss Allergan's claim for trade secret misappropriation.

Second, Allergan's Complaint fails to sufficiently allege the existence of any trade secrets because its high level, categorical descriptions of the purported trade secrets lack particularity. Indeed, the Complaint's laundry list of purported trade secrets are so broad as to encompass every aspect of Allergan's business. Compl. ¶ 34. For example, the listed categories encompass disclosures made in Allergan's own public patent portfolio (e.g. "data associated with Allergan's CBPA technologies"), and run-of-the-mill business information described so vaguely as to encompass information that any business maintains (e.g. "strategies to compete in the marketplace"). *Id.* Broad descriptions of this sort are simply too vague and conclusory to state a valid claim for trade secret misappropriation. The Court should dismiss the Complaint under Rule 12(b)(6).

## II. ALLEGATIONS OF THE COMPLAINT

### A. REVANCE OFFERS A NEW FORM OF INJECTABLE BOTULINUM NEUROTOXINS AND DERMAL FILLERS.

For years, Allergan has preserved a near monopoly in the market for its injectable BoNT product, Botox. For certain indications, Allergan still maintains that near monopoly because there is no presently approved biosimilar (i.e. generic) version of Botox. *See* Compl. ¶ 62. Allergan's near monopoly is lucrative: in 2022, Botox sales allegedly totaled nearly $4 billion in the United States alone. *Id.* ¶ 23. Allergan also markets a line of dermal filler products under the trade name

Juvéderm. Allergan alleges Juvéderm products accounted for more than $500 million in 2022 sales. *Id.* ¶ 24.

Revance is one of a few companies that has successfully developed an FDA-approved injectable BoNT product. The FDA approved that product, marketed under the name Daxxify, on September 8, 2022, for improvement in the appearance of moderate to severe glabellar (frown) lines. *Id*. ¶ 50. Notably, Daxxify is not a generic or biosimilar. Daxxify went through the full FDA application process for a new biologics license application ("BLA") to prove its formulation was safe and effective; and its application received FDA approval as a new biologic drug, *Id.* ¶ 50. Daxxify is superior to Botox in many ways, most notably because its effects last much longer, a feature that is particularly attractive to patients and surely scares Allergan.

In 2020, Revance launched a line of dermal filler products, marketed under the product line "RHA® Collection." *Id.* ¶ 66. Revance's RHA Collection competes with Allergan's Juvéderm line of dermal filler products. *Id*. ¶ 66. As the Complaint acknowledges, Revance licenses its RHA Collection dermal filler products from Teoxane SA. *Id.* ¶ 67.

In addition to its Daxxify and its RHA Collection products, Revance is seeking FDA approval of a Botox biosimilar. Revance has an ongoing collaboration with Viatris, Inc. ("Viatris"), a global pharmaceutical company specializing in a broad range of therapeutics. *Id*. ¶¶ 54, 57. Revance and Viatris have publicly stated they anticipate launching a Botox biosimilar in 2026. *Id*. ¶ 56.

**B.     ALLERGAN'S COMPLAINT ACCUSES REVANCE OF MISAPPROPRIATION OF AN ILL-DEFINED, OVERBROAD SWATH OF PURPORTED TRADE SECRETS, SEEMINGLY TOUCHING ALLERGAN'S ENTIRE BUSINESS.**

Paragraph 34 of the Complaint contains a catalog of purported trade secrets Allergan alleges Revance misappropriated. The list of Allergan's purported trade secrets "include" the following:

3

(i) characterization data concerning the Botox drug substance; (ii) the Botox Reference Standard; (iii) the critical reagents, standard operating procedures, protocols, and data associated with Allergan's CBPA technologies; (iv) Allergan's strategies and techniques to manufacture Botox, such as those described in confidential Botox regulatory filings relating to cell banks, upstream and downstream processes, storage conditions, finish-and-fill steps, and related data; (v) regulatory strategies and best practices; (vi) data regarding Allergan's customers for Botox and/or Juvéderm, including market data, preferences, contacts, buying history, confidential sales representative success rates, territories, identities, and related information; (vii) marketing strategies for Botox and Juvéderm; (viii) Allergan's past, current, and future commercial and regulatory plans concerning Botox and/or Juvéderm; and (ix) strategies to compete in the marketplace, including against Revance's Daxxify and RHA products.

Complaint ¶ 34. The remainder of the Complaint fails to shed additional light on the scope of what Allergan claims to be its trade secrets or which ones were misappropriated when or by whom. Rather, Allergan groups all its purported trade secrets together into the defined term "Allergan Trade Secrets" and then applies it indiscriminately throughout the Complaint.

**C.    ALLERGAN'S COMPLAINT FAILS TO ALLEGE FACTS THAT PLAUSIBLY SUGGEST REVANCE MISAPPROPRIATED ANYTHING.**

Allergan makes wild assertions regarding former employees; however, it only includes specific allegations with respect to three of its former employees who now work for Revance, implying each retained confidential Allergan information after the termination of her employment with Allergan. *Id*. ¶¶ 75, 76, 81. Yet Allergan does not name any of the three former employees as defendants or seek any relief from them, injunctive or otherwise.[2] And with respect to these three employees, what Allergan omits from its Complaint is telling and underscores the Complaint's critical failure to state a valid claim.

---

[2] Allergan does not and could not allege that *any* of these three former Allergan employees breached a noncompete agreement or otherwise violated any duty to Allergan simply by working for Revance. Each lives and works in a state that bans such agreements as a matter of public policy.

First, Allergan alleges Jennifer Aggobao, Allergan's former Director, Global Regulatory Affairs, Chemistry Manufacturing and Controls Biologics, discussed a job with Revance in July 2022 and resigned from Allergan in early August 2022. Compl. ¶¶ 84, 92, 93. Allergan alleges in the days and weeks leading up to her departure from Allergan (while Allergan admittedly was trying to convince her to stay by presenting a counteroffer), Ms. Aggobao electronically accessed certain Allergan documents. Paragraph 90 of the Complaint contains a chart purporting to show Ms. Aggobao's "data activity" in the "weeks and months before Ms. Aggobao departed Allergan." Compl. ¶ 90. The chart shows what Allergan alleges is various types of activity, including creating, accessing, downloading, and modifying files. *Id.* But a close inspection of the chart shows it does not support Allergan's claims of trade secret misappropriation. For example, the chart's legend says orange bars represent Ms. Aggobao's file downloading activity, but the chart does not contain any orange bars. Therefore, putting aside Allergan's innuendo, the chart actually shows Ms. Aggabao did *not* download Allergan information. Compl. ¶¶ 90, 91, 95. Further missing from the Complaint are any allegations that Ms. Aggobao:

- retained any Allergan documents or files following her Allergan employment;

- accessed or used any Allergan documents or files after her Allergan employment;

- disclosed any Allergan documents, files, or information to Revance; or

- used any Allergan documents, files, or information in performing her duties for Revance.

In short, the Complaint improperly transforms an allegation that Ms. Aggobao accessed certain files while an Allergan employee (a truly unremarkable proposition) into an unsupported conclusion that it is "clear that Revance has misappropriated Allergan Trade Secrets through Ms.

Aggbao due to her intimate knowledge and possession of information describing Allergan Trade Secrets." Compl. ¶ 101.

Second, the Complaint alleges Cara Chastain, Allergan's former Executive Director, Facial Aesthetics Marketing, resigned from Allergan in August 2021. In the lead up to her last day of Allergan employment, the Complaint alleges Ms. Chastain "sought access" to information concerning Allergan's "confidential competitive strategies in response to Revance's then-pending Daxxify product." Compl. ¶ 106. It also alleges she attended a "financial strategy meeting" on her last day as an Allergan employee. *Id.* ¶ 106. Just as with Ms. Aggobao, however, the Complaint does not allege Ms. Chastain retained any Allergan information upon her departure or provided any Allergan information to Revance. The Complaint does not allege Ms. Chastain:

- *succeeded* in obtaining access to Allergan's "confidential competitive strategies in response to Revance's then-pending Daxxify product" (*see* Compl. ¶ 106);

- learned any new confidential Allergan information during the alleged "financial strategy meeting" (*see* Compl. ¶ 106);

- copied or otherwise exfiltrated any Allergan documents, files, or information;

- retained any Allergan documents or files following her Allergan employment;

- accessed or used any Allergan documents or files after her Allergan employment;

- disclosed any Allergan documents, files, or information to Revance; or

- used any Allergan documents, files, or information in performing her duties for Revance.

Finally, the Complaint alleges Wendy Shepherd, a former Senior Business Development Manager (*i.e.*, a sales representative) in Oklahoma, left Allergan's employment in February 2023. The Complaint claims that during a job interview, Ms. Shepherd shared with Revance "a list of

6

Allergan's top salespeople with associated sales figures and geographic locations" and "a screenshot of sales figures for 2022, including those concerning Botox and Juvéderm."[3] Compl. ¶ 114. Allergan also alleges Ms. Shepherd sent certain Allergan files to her personal email address but, again, the Complaint does *not* allege Ms. Shepherd provided any of those files to Revance. Compl. ¶¶ 117-21. The Complaint also does not allege Ms. Shepherd:

- retained any Allergan documents or files following her Allergan employment;

- accessed or used any Allergan documents or files after her Allergan employment;

- disclosed any Allergan documents, files, or information to Revance; or

- used any Allergan documents, files, or information in performing her duties for Revance.

### D.    ALLERGAN FILES A PRETEXTUAL SUIT AGAINST REVANCE.

On April 28, 2023, just days after Revance announced it received certain regulatory approvals that would allow it to bolster Daxxify production significantly, Allergan filed its Complaint, suddenly claiming misappropriation by Revance through employees whose Allergan employment ended months or years ago.

In an effort to negate the obvious anti-competitive inference that emanates from the timing of its filing, Allergan disingenuously claims a routine case filing in January 2023 in a separate patent litigation Allergan has filed against Revance motivated the filing of this case.[4] Compl. ¶ 85. Specifically, Allergan alleges it suddenly recognized a "pattern of trade secret misappropriation

---

[3] Although Allergan alleges this information is "proprietary," it does not allege a list of its sales employees' productivity (or Ms. Shepherd's relative rank therein) is a trade secret. *See* Compl. ¶ 34. It similarly does not allege its 2022 sales figures for Botox and Juvéderm – sales figures Allergan itself touts (¶¶ 23-24) – are trade secrets.

[4] Notably, the same legal team who filed this case on behalf of Allergan represents Allergan in the Delaware patent case (*Allergan, Inc. et al. v. Revance Therapeutics, Inc. et al.*, C.A. No. 21-1411 (D. Del. filed on Oct. 1, 2021) *See* Exhibit A. The Stipulated Protective Order in the Delaware patent case limits the disclosure or use of Revance's confidential information disclosed in discovery in the Delaware patent litigation and would not permit the use or disclosure of that information for the purpose of filing or litigating this case.

for Revance's benefit" when Revance filed a declaration stating – brace for it – Ms. Aggabao's "role at Revance is consistent with her responsibilities at Allergan." Compl. ¶ 85. Despite the Complaint's attempt at drama, this is hardly a plot twist, given Ms. Aggabao told Allergan five months earlier, on **August 26, 2022,** that "her next employer was Revance," the FDA approved Revance's Daxxify on September 22, 2022, and Allergan took no action.[5] Compl. ¶ 98.

Counts I and II assert claims for Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (18 U.S.C. § 1836(b)) and Tennessee Uniform Trade Secrets Act (Tenn. Code Ann. § 47-25-1701 *et seq.*). Notably, Allergan's suit does not name any former employees as defendants, does not allege Allergan has ever filed suit against the former employees to protect against the allegations it lodges against them, and does not allege any former Allergan employees are bound by restrictive covenants or some other legal duty that impairs their ability to work for Revance. Such allegations and assertions are of course standard in a legitimate lawsuit initiated for a proper – as opposed to anticompetitive – purpose.

### III. LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a Rule 12(b)(6) motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citation omitted). "To establish the facial plausibility required to unlock the doors of discovery, the plaintiff cannot rely on legal conclusions or threadbare recitals of the elements of a cause of action, but, instead the plaintiff must plead

---

[5] Ms. Aggabao's new role was hardly a secret — she updated her LinkedIn profile to reflect her new, nearly identical-titled role shortly after starting at Revance. Jennifer Dulalia-Aggabao | LinkedIn.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chumley v. Navistar, Inc.*, No. 3:18-cv-0510, 2018 U.S. Dist. LEXIS 141766, at *3 (M. D. Tenn. Aug. 20, 2018) (quoting *Iqbal*, 556 U.S. at 678-79) (internal quotation marks and alterations omitted). Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 634 (6th Cir. 2007).

## IV. LEGAL ARGUMENT

A. **THE COMPLAINT FAILS TO STATE A CLAIM AGAINST REVANCE BECAUSE IT FAILS TO ALLEGE THAT REVANCE MISAPPROPRIATED ANY PURPORTED TRADE SECRET.**

To state a claim for trade secret misappropriation against Revance, Allergan must allege that *Revance* "acquired, disclosed, or used [trade secret information] improperly." *Russell v. Killian*, No. 3:22-cv-00574, 2023 U.S. Dist. LEXIS 33945, at *14 (M. D. Tenn. Mar. 1, 2023) (citations omitted). Accordingly, to defeat Revance's Motion, the Complaint must allege *Revance* (not former Allergan employees) disclosed or used Allergan's trade secrets and "knew or had reason to know" the trade secret(s) were "(i) derived from or through a person who had used improper means to acquire the trade secret; (ii) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]" *CommonSpirit Health v. HealthTrust Purchasing Group, L.P.*, No. 3:21-cv-00460, 2022 U.S. Dist. LEXIS 81688, at *11 (M. D. Tenn. May 5, 2022) (quoting 18 U.S.C. § 1839(5)(B)(i)-(ii)). The "requirements for establishing misappropriation of a trade secret are largely the same under the DTSA and the [TUTSA]," such that courts typically analyze both claims simultaneously. *Enchant Christmas Light Maze & Market, Ltd. v. GlowCo*

*LLC*, No. 3:19-cv-00966, 2019 U.S. Dist. LEXIS 19660, at *13 (M. D. Tenn. Nov. 13, 2019); *see also* Tenn. Code. Ann. §§ 47-25-1702(1).

The Complaint tries to promote an inference that Revance must have misappropriated Allergan's purported trade secrets simply because some former Allergan employees now work for Revance. But federal district courts, in this district and elsewhere, routinely reject this theory, even in cases where the plaintiff alleges brazen misappropriation by the departed employee. This Court should do the same.

For example, in *Rezult Group, Inc. v. Turkheimer*, Judge Trauger rejected such an inference and dismissed the plaintiff's claims under Rule 12(b)(6). 2023 WL 1975239, at * 1 (M.D. Tenn. Feb. 13, 2023). In that case, the plaintiff alleged that its former business development manager had access to a broad range of the plaintiff's trade secrets, sent himself confidential documents when he resigned, wiped all data from his company laptop, and then started working for a direct competitor in the same highly specialized and competitive industries as he worked for the plaintiff. *Id.* The plaintiff alleged that the former business development manager's conduct created "an inference" his new employer misappropriated trade secrets. *Id.* In granting the new employer's motion to dismiss, the court reasoned it "cannot find that these facts, accepted as true and viewed in the light most favorable to the plaintiff, are sufficient to give rise to a plausible inference that TIG [the new employer] — as opposed to Turkheimer [the former employee] — acquired, disclosed, or used trade secrets belonging to Rezult [the former employer]." *Id.* at *8. In other words, the mere hiring of a plaintiff's former employee – even one in possession of stolen trade secrets – is not sufficient to state a claim for misappropriation against the new employer. *Id.*

The District of Colorado also rejected the same theory advanced by Allergan here (misappropriation by implication) in *Ciena Communs., Inc. v. Nachazel*, No. 09-cv-02845-MSK-

MJW, 2010 U.S. Dist. LEXIS 90460, at *14 (D. Colo. Aug. 30, 2010). In that case, the plaintiff alleged a departing employee secretly copied the plaintiff's entire computer hard drive and thereby retained "hundreds of confidential and proprietary documents" belonging to the plaintiff while he was now working for a competitor. *Id.* at *2. The plaintiff then filed suit against the competitor for trade secret misappropriation. In dismissing the claim under Rule 12(b)(6), the district court explained the plaintiff failed to allege the "specific facts that have led [the plaintiff] to the conclusion that [the defendant] has misappropriated or threatens to misappropriate the trade secrets." *Id.* at *13. Further to the point though, the court flatly rejected the plaintiff's argument that one could infer misappropriation from the facts alleged, stating "such an absolute rule — essentially imposing strict liability on a corporation that hires a person possessing others' trade secrets — is contrary to the very language of the Uniform Trade Secrets Act." *Id.* at 14.

Other courts apply the same logic in other would-be trade secret cases, dismissing them at the pleading stage where the plaintiff attempts to plead misappropriation by inference merely because the defendant hired the plaintiff's former employee. *See, e.g., Biomin Am., Inc. v. Lesaffre Yeast Corp.*, No. 2:20-CV-02109-HLT, 2020 WL 2395200, at *6 (D. Kan. May 12, 2020) ("Without any specific factual averments showing [the new employer] was aware of the alleged misappropriation [by former employees], the Court will not 'reflexively impute' any improper use or disclosure of [the plaintiff's trade secrets onto [the new employer].)"; *Wright Med. Tech., Inc. v. Paragon 28, Inc.*, No. 18-CV-00691-PAB-STV, 2019 WL 4751807, at *4 (D. Colo. Sept. 30, 2019) ("The mere fact that [the new employer] hired individuals to work in similar roles as they held at [the plaintiff] is insufficient to impute any misappropriation onto [the new employer].)"; *M/A-COM Technology Solutions, Inc. v. Litrinium, Inc.*, SACV 19-220 JVS (JDEx), 2019 U.S. Dist. LEXIS 212479, at * 26 (N. D. Cal. Sep. 23, 2019) ("The allegation that [plaintiff's former

employee] had knowledge of trade secret information and was then recruited to [the competitor defendant] describes a change in employment, but not wrongful conduct" and therefore fails to state a claim for trade secret misappropriation); *AssuredPartners of Oregon, LLC v. Reese*, No. 6:22-cv-00673-MC, 2022 U.S. Dist. LEXIS 233618, at * 7-9  (D. Or. Dec. 30, 2022) (granting defendant's motion to dismiss the trade secret misappropriation claims on the grounds that "knowledge that [plaintiff's former employee] may have misappropriated [plaintiff's] trade secrets is not enough to inculpate [defendants] of misappropriation"); *Bayco Products v. Lynch*, No. 3:10-cv-1820-D, 2011 U.S. Dist. LEXIS 46163, at * 15 (N. D. Tx. Apr. 28, 2011) ("The fact that a former employee entered the employment of a competitor does not in of itself support a plausible claim that the employee shared proprietary information that enabled the new employer to develop and sell a competing product.").

This Court should follow the prevailing view and dismiss this trade secret misappropriation case grounded in the implied liability theory advanced by Allergan. The Complaint simply fails to allege any facts showing Revance acquired or used Allergan's purported trade secrets. By way of explanation, Allergan tries to conjure a trade secret misappropriation claim from the following facts: (1) Revance and Allergan are competitors; (2) Revance hired certain former Allergan employees for various roles at Revance similar to the roles they performed at Allergan; and (3) some of the former Allergan employees allegedly either attempted to or succeeded in forwarding confidential information outside of Allergan before their departures from Allergan. But, as explained above, district courts have routinely rejected this theory of imputed liability even where a plaintiff alleges *more* suspicious activity by former employees. *See, e.g.*, *Rezult Group,* 2023 WL 1975239, at * 1 (departing employee wiped his laptop); *Ciena Communs.,* 2010 U.S. Dist. LEXIS 90460, at *14 (copying of an entire hard drive). Despite its length, the Complaint lacks any

allegations of fact that show former Allergan employees shared any of Allergan's purported trade secrets with Revance. Even if Allergan's departing employees accessed Allergan files in their final days of employment, that is insufficient to show misappropriation *by Revance*, the only defendant. Allergan has therefore failed to allege misappropriation by Revance. The Court should dismiss the Complaint under Rule 12(b)(6).

**B. ALLERGAN'S COMPLAINT FAILS TO STATE A CLAIM BECAUSE IT FAILS TO IDENTIFY ALLERGAN'S PURPORTED TRADE SECRETS WITH REASONABLE PARTICULARITY.**

"Generally, a party alleging trade secret misappropriation must particularize and identify the purportedly misappropriated trade secrets with specificity." *NextPay, Inc. v. Comdata Network, Inc.*, 2018 WL 4185374 (M.D. Tenn. Aug. 30, 2018); *see also Western Excelsior Corp. v. Propex Operating Co., LLC*, No. 1:16-cv-506, 2017 U.S. Dist. LEXIS 227496, at *5 (E. D. Tenn. Sep. 6, 2017) (requiring identification of "the specific things it claims to constitute trade secrets."). Where the alleged trade secrets the complaint describes are broad enough to encompass public information, courts routinely hold the plaintiff has failed to state a claim. *See, e.g.*, *AutoTrakk, LLC v. Auto. Leasing Specialists, Inc.*, No. 4:16-CV-01981, 2017 U.S. Dist. LEXIS 106188, at *11 (M.D. Pa. July 10, 2017) (ruling this "open-ended style of pleading leaves the questions of which material was misappropriated—and how precisely that misappropriation was implemented—entirely up to the reader's imagination."); *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 U.S. Dist. LEXIS 64350, at *9 (N.D. Cal. May 1, 2014) ("Such blather makes it virtually impossible to distinguish the alleged trade secrets from knowledge in the field.").

In this case, Allergan's Complaint fails to identify the purported trade secrets with any particularity to distinguish them from public information. For example, Allergan alleges its purported trade secrets include "reagents, standard operating procedures, protocols, and data associated with Allergan's CBPA technologies." Compl. ¶ 34(iii). Yet, Allergan's own patent

filings disclose "reagents, standard operating procedures, protocols, and data associated with Allergan's CBPA technologies." For example, the specification of U.S. Patent No. 8,618,261 (assigned to Allergan) provides "[t]he novel cell-based assays disclosed in the present specification rely on cells, reagents and detection methods that enable the assay to detect picomolar quantities of BoNT/A in a sample." *See* Ex. A at 3:48-51. That specification goes on to disclose the reagents, procedures, protocols, and data Allergan uses to support its claim that it invented the technology.[6]

Allergan also makes much of its supposedly secret "reference standard" "used to determine whether manufactured lots of Botox drug substance and drug product fall inside or outside of acceptable potency levels." Compl. ¶ 30. Such information, however, only qualifies as trade secret if it is not "readily ascertainable through proper means." 18 U.S.C. § 1839(3); TN Code § 47-25-1702(4). And Allergan admits that "the primary way to assess potency was through use of *in vivo* LD50 mouse lethality test, which is a bioassay that generally involves administering serial dilutions of BoNT to groups of mice." Compl. ¶ 31. Therefore, the Complaint does not allege facts sufficient to show one could not reverse engineer the "reference standard" by simply administering "serial dilutions of [Botox] to groups of mice" as scientists have been doing since at least 1927.[7] *See* Compl. ¶ 31. Per the Complaint, doing so would, presumably, reveal the "acceptable potency levels" for Allergan.

In other words, Allergan's broad, categorical description of its purported secrets make it impossible to distinguish between what it claims to be trade secret from technology readily available in the public domain. *See B&L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 211 (Tenn. App. Ct. 2004) ("Information cannot constitute a trade secret and, thus, is not

---

[6] The Court may take judicial notice of the fact that Allergan owns more than *four thousand* other U.S. patents, in which reams of information about Allergan's technology are disclosed.

[7] https://royalsocietypublishing.org/doi/epdf/10.1098/rspb.1927.0030

confidential if the subject matter is of public knowledge or general knowledge in the industry or if the matter consists of ideas which are well known or easily ascertainable.") (internal citations and quotation marks omitted).

Allergan similarly describes its various "business" trade secrets in the broadest terms imaginable, without any attempt to distinguish information readily available in the public domain or grounded in Allergan's employees' general skill or knowledge. For example, Allergan claims its trade secrets include "data regarding Allergan's customers for Botox and/or Juvéderm," "marketing strategies," and "strategies to compete in the marketplace." *See* Compl. ¶ 34. These categories sweep in broad swaths of information that simply do not qualify for trade secret protection. Indeed, under Tennessee law, publicly available information (like customer lists) do not qualify for trade secret protection. *See Hinson v. O'Rourke*, No. M201400361COAR3CV, 2015 WL 5033908, at *3 (Tenn. Ct. App. Aug. 25, 2015) ("Confidential information, like trade secrets, does not include information that is generally available in the trade or easily available from sources other than the employer, such as customer lists, knowledge of the buying habits and needs of particular clients, pricing information, and profit and loss statements.").

Paragraph 34(viii) of the Complaint illustrates the absurd over-breadth of Allergan's description of its purported trade secrets. In its zeal to accuse Revance of misappropriating everything possible, Allergan alleges Revance misappropriated Allergan's "past, current, *and future* commercial and regulatory plans concerning Botox and/or Juvéderm." Compl. ¶ 34(viii) (emphasis added). Absent precognition, however, it is not possible for Revance to have misappropriated Allergan's "future . . . plans." *Id.* The Court should not countenance this type of indiscriminate, over-the-top pleading by finding it sufficient to state a claim. Rather, because these categories broadly describe information not legally subject to trade secret protection, they do not

describe Allergan's purported trade secrets with sufficient particularity to state a viable claim. The Court should dismiss Counts I and II.

## V. CONCLUSION

For all the foregoing reasons, the Court should grant Revance's Motion to Dismiss and issue an order dismissing the Complaint with prejudice and in its entirety.

Respectfully submitted,

REVANCE THERAPEUTICS, INC.

By its Attorneys:

*Of Counsel:*

James N. Boudreau
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Phone: (215) 988-7833
Fax: (215) 717-5209
Email: James.Boudreau@gtlaw.com

Gregory S. Bombard
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Phone: (617) 310-6000
Fax: (617) 310-6001
Email: gregory.bombard@gtlaw.com


Dated:  June 8, 2023

*/s/ Katie Molloy*
Katie Molloy
Tennessee Bar No. 26877
Greenberg Traurig, P.A.
101 East Kennedy Boulevard
Suite 1900
Tampa, FL  33602
Phone: (813) 318-5710
Email: molloyk@gtlaw.com

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document was served on all counsel of record in this case via CM/ECF on June 8, 2023.

*/s/ Katie Molloy*
Katie Molloy
