**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALLERGAN, INC., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00431** |
| | ) | **Judge Richardson/Frensley** |
| **REVANCE THERAPEUTICS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

### I. INTRODUCTION

Plaintiffs Allergan, Inc.; Allergan Pharmaceuticals Ireland Unlimited Company; Allergan USA, Inc.; and Allergan Sales, LLC (collectively, "Allergan") brought this suit against Defendant Revance Therapeutics, Inc. ("Revance") alleging misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA") (18 U.S.C. § 1836) and the Tennessee Uniform Trade Secrets Act ("TUTSA") (Tenn. Code Ann. § 47-25-1701, et seq.) related to Allergan's botulinum neurotoxin injectable products and dermal fillers, including its "flagship products," collectively known as Botox. Docket No. 1 (Complaint). Revance has denied the substantive allegations and asserted affirmative defenses. Docket No. 151.

This matter is now before the Court upon a Motion to Compel filed by Revance. Docket No. 158. Revance has filed a Supporting Memorandum and other supporting documents. Docket Nos. 158-1 through 158-13. Allergan has filed Plaintiff's Portion of Joint Statement of Issues Pursuant to Local Rule 37.01, a Response in Opposition, and supporting documents.

Docket Nos. 180, 181, 181-1 through 181-4. Revance has filed a Reply. Docket No. 182. For the reasons set forth below, Revance's Motion (Docket No. 158 ) is GRANTED IN PART.

## II. LAW AND ANALYSIS

### A. Preliminary Matters

Allergan contends that Revance's Motion is procedurally improper because Revance did not submit a joint statement with its Motion as required by Local Rule 37.01(b) and because the Motion is premature, "given that Allergan already produced and continues to produce most of the documents responsive to the categories of discovery requests at issue here." Docket No. 181, p. 5.

Although it originally asserted that "[t]he parties agreed to forego submitting joint statements pursuant to Local Rule 37.01," Revance drops this contention in its Reply, arguing instead that it should not have had to "double[] the work by duplicating its arguments in the form of a joint statement." Docket No. 158, p. 2; Docket No. 182, p. 8.

Allergan is correct that the Local Rules require the submission of a Joint Dispute Statement under these circumstances, and that parties are not free to disregard this requirement without permission from the Court. L.R. 37.01(b). The process of crafting a joint statement often aids resolution of the dispute. Additionally, a joint statement that lays out the specific disputed requests and responses in one place, along with the parties' positions, is a great help to the Court in sorting out the dispute, rather than having to move back and forth between the discovery requests and responses that are attached as exhibits to the motion. Allergan has drafted an admirable statement containing the disputed requests and responses, as well as its own positions. Docket No. 180.

Nevertheless, in order to avoid further delay of this matter, the Court will rule on the merits of the Motion in the absence of a complete Joint Dispute Statement. Revance is cautioned that the Court may deny future motions on the basis of failure to include the Joint Dispute Statement without prior permission from the Court.

Additionally, while the Court agrees that the Motion is premature in the sense that the Parties appear not to have exhausted their efforts, the Court also sees the need to provide structure to the process in order to keep the case moving forward. The Court urges the Parties to continue working toward resolution of their discovery disputes and to file notice with the Court of any disputes that have been narrowed or resolved.

**B. Discovery Requests and Motions to Compel**

Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery. Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1). Interrogatories are covered by Rule 33, which provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery. Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016),

*quoting* Fed. R. Civ. P. 26(b)(1).  The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action,
> (2) the amount in controversy,
> (3) the parties' relative access to relevant information,
> (4) the parties' resources,
> (5) the importance of the discovery in resolving the issues, and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added).  "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court."  *United States v. Carell*, No. 3:09-0445, 2011 U.S. Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery.  Fed. R. Civ. P. 37(a)(1).  The moving party "must demonstrate that the requests are relevant to the claims or defenses in the pending action."  *Carell*, 2011 U.S. Dist. LEXIS 57435 at *5, *quoting Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309-10 (W.D. Tenn. 2008) (internal quotation marks omitted).  "Relevance for purposes of discovery is broadly construed and the information sought need not be admissible to be discoverable."  *T.C. ex rel S.C. v. Metro Gov't of Nashville & Davidson Cty.*, No. 3:17-01098, 2018 WL 3348728, 2018 U.S. Dist. LEXIS 113517, at *17 (M.D. Tenn. July 9, 2018).  "If relevancy is shown, the party resisting discovery bears the burden of demonstrating why the request is unduly burdensome or otherwise not discoverable under the Federal Rules."  *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5 (internal quotation marks and citation omitted).  Further, for purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

## C. **Revance's Motion to Compel**

Revance requests that the Court compel Allergan to produce documents and information

responsive to three categories of discovery requests:

> (1) the measures [Allergan] allegedly took to protect the purported
> trade secrets at issue (Request Nos. 5, 23, and Interrogatory No. 3);
> (2) [Allergan's] current and former employees whom [Allergan]
> contend[s] are central to [Allergan's] claims (Request Nos. 29, 30,
> 32, 33, 34, 35, 36 and Interrogatory No. 12); and (3) the
> competitive threat to [Allergan's] monopoly caused by the entry of
> Revance's competing product, a central theme of Revance's
> Affirmative Defenses (Request Nos. 45, 46, 47, 48, 49, 50, 51 and
> 54).

Docket No. 158, p. 1.[1]

## 1. **Measures Taken by Allergan to Protect Information it Claims as Trade Secrets**

The discovery requests in this category are Requests for Production (RFP) Nos. 5 and 23,

and Interrogatory No. 3. *Id.* Revance contends that these requests are relevant to Allergan's burden

of proving that it employed reasonable measures to preserve the secrecy of the information it

claims as trade secrets. Docket No. 158-1, p. 8.

### (a) **RFP No. 5**

> All versions of any employment agreements, confidentiality
> agreements, assignment agreements, non-compete agreements, or
> other agreements that Plaintiffs require or have required employees
> to execute as a condition of employment since 2010.

Docket No. 158-5, p. 9.

Allergan responded by objecting and agreeing to conduct a reasonable search and produce

"relevant, responsive, and non-privileged exemplar documents sufficient to show the terms of

---

[1] The discovery requests and responses are set forth here as originally written and served. *See*
Docket Nos. 158-5, 161. The Parties have indicated that in many instances, the requests have
been narrowed or otherwise altered by the Parties in the course of their negotiations.

'employment agreements, confidentiality agreements, assignment agreements, [and] non-compete agreements' executed by relevant employees . . . ." *Id.* at 10.

Revance contends that it is "entitled to discover whether [Allergan employs] confidentiality agreements with [its] employees as a matter of course and the terms of any such agreements." Docket No. 158-1, p. 9. Revance argues that:

> In addition to the template agreements applicable to all employees, [Allergan] should produce the specific agreements signed by each of the employees [Allergan contends] are relevant to [its] allegations. **Exhibit 10** (stating more than 115 former employees are "relevant to this action"). To the extent [Allergan is] unable to produce such agreements, the Court should order [Allergan] to so certify, as keeping track of such agreements itself is relevant to [Allergan's] ability to prove [it] took "reasonable measures" to ensure the secrecy of the purported trade secrets.

*Id.*

Allergan asserts that it "already produced and will continue to produce:"

- Company confidentiality policies, including employee Codes of Conduct, and employee handbooks, which Allergan cited in response to Interrogatory No. 5. Roberts Decl. ¶ 5. Allergan is continuing to search for and produce additional responsive policies as it locates them. However, locating some of the older materials (for example, those from decades ago) has proven difficult due to their age. Allergan will continue to conduct a reasonable and diligent search for these materials and will produce any other responsive policies it locates.

- Employment agreements with specific current and/or former employees. *Id.* ¶ 6.

- Personnel files for over fifty current and/or former employees for their employment prior to leaving Allergan for Revance, which in many cases include those employees' employment agreements. *Id.* ¶ 7. Indeed Revance admits that Allergan produced many of the requested personnel files. . . . Allergan is continuing to collect, review, and produce on a rolling basis the

6

> remaining requested personnel files, to the extent they are located in a reasonably diligent search. Roberts Decl. ¶ 7.

- Exemplary training materials that Allergan's employees are required to review. *Id.* ¶ 8. Allergan is also producing exemplary email requests that employees receive from Allergan to remind them to acknowledge their training completion.

Docket No. 181, p. 11-12.

Revance replies that "[Allergan] should produce copies of the forms of employment agreements [it contends it] entered into with employees during the relevant period or confirm [it does] not have such records." Docket No. 182, p. 5.

Under TUTSA, trade secrets are "information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan," which the owner has made reasonable efforts to keep secret, and which derive independent economic value from that secrecy. Tenn. Code Ann. § 47-25-1702(4). Because Allergan asserts that Revance has misappropriated Allergan's trade secrets, Allergan's "reasonable efforts" to keep them secret are relevant to the claims in this case. The Court finds that any confidentiality agreements that Allergan has required employees to execute during the relevant time period fall under the category of Allergan's reasonable efforts. Revance has not carried its burden to show that the other documents requested by RFP No. 5 are relevant.

Because the Court finds that employee confidentiality agreements are relevant to the claims in this case, the burden passes to Allergan to demonstrate that the burden of producing these agreements would be undue, or that they are otherwise not discoverable under the Federal Rules. *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5. As set forth above, Allergan does not make such arguments, asserting instead that it has already produced those it has located and is continuing its search. Docket No. 181, p. 11-12.

To the extent that Allergan has not already done so, it must conduct a reasonable search for any employee confidentiality agreements executed since January 1, 2010, and produce them to Revance.

**(b) <u>RFP No. 23</u>**

RFP No. 23 requests "[a]ll communications with any third party regarding any Purported Trade Secret." Docket No. 158-5, p. 24. Allergan responded by objecting. *Id.*

Revance contends that "[t]o the extent [Allergan] disclosed [its] purported trade secrets to others, Revance is entitled to know." Docket No. 158-1, p. 9.

Allergan asserts that it has produced:

> - Third-party communications responsive to RFP No. 23 of which Allergan is aware, such as text messages in which Ms. Aggabao sought trade secret information from Allergan employees. [Roberts Decl.] ¶ 10. Allergan will continue to produce such third-party communications to the extent it locates them in a reasonable and diligent search.

Docket No. 181, p. 12.

Revance has not established that any communication of any kind with a third party that is "regarding" a trade secret is relevant. But as with the information sought by RFP No. 5, the Court agrees that any instance of Allergan disclosing its claimed trade secrets to third parties (not subject to a non-disclosure agreement) is relevant to Allergan's claims because it relates to the reasonable measures that Allergan took to maintain the secrecy of the information.

The burden therefore passes to Allergan to demonstrate that the burden of producing these agreements would be undue, or that they are otherwise not discoverable under the Federal Rules. *Carrell*, 2011 U.S. Dist. LEXIS 57435, at *5. As to burden, Allergan maintains that:

> Allergan is not aware of any other communications with third parties about the asserted trade secrets that are not subject to an NDA. Allergan would therefore have to search *all* external

8

> communications of *all* its employees across the entire company
> and then review each communication to determine if the asserted
> trade secrets were discussed with any third parties not subject to an
> NDA. The burden on Allergan would be further amplified because
> RFP No. 23 contains no time or relevance restrictions and seeks
> any communication vaguely "regarding" any alleged trade secret.
> The scope of such a search would be staggering and is not
> proportional to the needs of the case.

Docket No. 181, p. 15 (emphasis in original; omitted footnote asserts that in its current corporate

form, Allergan has approximately 50,000 employees worldwide).

Allergan suggests that the task of searching for these documents can be accomplished with

far less burden by searching for the specific names of files that contain trade secrets as part of its

search for responsive ESI. *Id.* Allergan states that "once the parties agree on a formal ESI search

protocol, if Revance puts the file names in its search terms, Allergan will commit to searching for

those file name terms across the agreed-upon custodians." *Id.* at 15-16.

In Reply, Revance argues (generally, not only in response to this RFP) that "the Court

should not and cannot simply accept [Allergan's] vague promises to keep looking." Docket No.

182, p. 5. With regard to RFP No. 23 specifically, Revance asserts that Allergan "should complete

[its] search for such communications and detail the efforts [it] undertook to determine whether the

Purported Trade Secrets have been shared with third parties not subject to confidentiality

agreements." *Id.*

Given the volume of data to be searched, the Court agrees that ESI search term practice

will be the best way for Allergan to respond to this RFP. Based on the Parties' recent Joint Status

Report on ESI Protocols, it appears that some progress has been made toward developing a Joint

ESI Protocol.[2] Docket No. 200. Once that Protocol has been finalized, Allergan must search for

---

[2] Unfortunately (but not surprisingly), the Status Report indicates that "[t]he parties may need to
seek further Court intervention on the disputed custodians and search terms." Docket No. 200, p.

the file name terms across the agreed-upon custodians and produce any non-privileged documents containing instances of Allergan disclosing its claimed trade secrets to third parties without a confidentiality agreement since January 1, 2010.

**(c) Interrogatory No. 3**

Interrogatory No. 3 asks Allergan: "[f]or each Purported Trade Secret, identify all persons with access to the Purported Trade Secret from the time of its creation to the present." Docket No. 161, p. 11. Allergan responded by objecting and agreeing to search for and produce any "non-privileged documents related to [Revance's] access to and misappropriation of Allergan Trade Secrets . . . ." *Id.* at 12.

Revance asserts that after a meet and confer call, Allergan promised to supplement its response to this interrogatory but has not done so. Docket No. 158-1, p. 10. Allergan does not specifically discuss Interrogatory No. 3 in its Response, stating generally that it has "already produced vast quantities of documents responsive to Category 1 (RFP Nos. 5 and 23, ROG No. 3) and is continuing to supplement its production on a rolling basis." Docket No. 181, p. 11. Allergan maintains that it "only objects to these requests to the extent they are overbroad, overly burdensome, or seek irrelevant documents, and has continued conferring with Revance on the appropriate scope." *Id.*

In Reply, Revance argues that Allergan "agreed to supplement this Interrogatory **more than six months ago**—on **December 5, 2023**—but [has] failed to do so despite numerous requests." Docket No. 182, p. 6 (emphasis in original).

Allergan does not argue that the information sought by this interrogatory is irrelevant, and

---

3. The Court urges the Parties to sincerely pursue an agreed solution to these disputes. Litigants generally prefer the ESI custodians and search terms they choose for themselves over the ones the Court selects for them.

the Court finds that it is relevant to Allergan's claims because it is relevant to Allergan's reasonable measures to maintain the secrecy of its claimed trade secrets. Allergan has not articulated any particular burden associated with producing the information or any other reason why it should not be produced. *See* Docket No. 181. Therefore, Allergan must supplement its response to Interrogatory No. 3. If Allergan has no additional information to provide, it may supplement by stating as much.

## 2. <u>Allergan's Current and Former Employees</u>

The discovery requests in this category are RFP Nos. 29, 30, 32, 33, 34, 35, and 36, and Interrogatory No. 12. Docket No. 158, p. 1. Revance describes the information sought by these requests as "discovery regarding several of [Allergan's] current and former employees that [Allergan] put at issue in this action." Docket No. 158-1, p. 11. Revance asserts that Allergan has "persisted in seeking discovery from Revance concerning a list of 115 individuals that [Allergan alleges] were [its] former employees and who later transitioned to Revance," and that while Revance "does not agree with [Allergan's] position that all 115 individuals are subject to discovery simply because [Allergan says] so," "to the extent [Allergan intends] to rely on any of those 115 individuals to prove any element of their claim, then [Allergan] must produce discovery relevant to those individuals." *Id.*

### (a) <u>RFP No. 29</u>

RFP No. 29 requests "[t]he complete personnel file (or the equivalent [Allergan] maintain[s]) for each of the former Allergan employees listed in Appendix 1." Docket No. 158-5, p. 28. Allergan responded by objecting and agreeing to search for and produce "relevant, responsive, and non-privileged personnel files for the former employees of [Allergan] believed to have been involved in [Revance's] misappropriation of Allergan Trade Secrets . . . ." Docket No.

158-5, p. 29.

**(b) RFP No. 30**

RFP No. 30 seeks "[a]ll employment agreements, confidentiality agreements, and/or restrictive covenant agreements for each of the former Allergan employments listed in Appendix I." Docket No. 158-5, p. 29. Allergan responded by objecting and referring Revance to Allergan's response to RFP No. 29. *Id.* at 30.

Revance maintains that Allergan has produced "a smattering of personnel records for only approximately 50 individuals" and requests that the Court compel Allergan "to produce all personnel records for the remaining individuals identified in [its] discovery requests to Revance." Docket No. 158-1, p. 11. Allergan responds that it has already produced personnel files for over fifty individuals and "is also continuing to diligently collect, review and produce such documents in the remainder of the files, to the extent that they exist." Docket No. 181, p. 17. Revance replies that Allergan "should produce the personnel files of all individuals [it contends] are relevant to this case." Docket No. 182, p. 5.

There does not appear to be any dispute as to the relevance of the information sought by these RFP, and Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

**(c) RFP No. 32**

RFP No. 32 seeks "[a]ll documents concerning the departure from Allergan of any former Allergan employee listed in Appendix I." Docket No. 158-5, p. 31. Allergan responded by objecting and referring Revance to Allergan's response to RFP No. 29. *Id.*

12

Revance contends that because Allergan claims that Revance "engaged in 'a concerted pattern and practice of filling its ranks with individuals who have intimate knowledge of the [purported trade secrets]' and used 'employee raiding' to gain access to the purported trade secrets," "[t]he circumstances in which these individuals separated from [Allergan's] employment is . . . directly probative of [Allergan's] allegations that Revance 'raided' [Allergan's] employees." Docket No. 158-1, p. 12, *quoting* Docket No. 1 ("purported" trade secrets added by Revance).

Allergan responds that "Revance does not explain how such information could be so probative," arguing that "the information most probative of Allergan's allegations would be that which concerns the circumstances under which Revance *hired* those employees—which is discovery that Allergan has been seeking from Revance for months." Docket No. 181, p. 17 (emphasis in original). Regardless, Allergan asserts that "to the extent Allergan maintains in a centralized location the information Revance seeks, it would be in the personnel files that Allergan already produced and continues to produce." *Id.*

In reply, Revance reiterates that "[t]he circumstances under which these employees separated are highly relevant to Revance's defense that it did not engage in poaching" and argues that Allergan "must produce the email communications and other documents that would reveal the circumstances and reasons for the employees' departure." Docket No. 182, p. 6.

The Court finds that information about the departure from Allergan of those employees that Allergan has identified as having left Allergan for Revance is relevant to the claims and defenses in this matter, specifically Allergan's claim that Revance engaged in employee raiding to gain access to Allergan's trade secrets and Revance's defense that it did not engage in such conduct. *See* Docket Nos. 1, 151. Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket No. 181. Therefore, to

13

the extent that any nonprivileged documents that are responsive to RFP No. 32 are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

**(d) <u>RFP No. 33</u>**

RFP No. 33 seeks "[a]ll communications with current or former employees of [Allergan] concerning purported post-employment restrictive covenants since January 1, 2020. This Request includes without limitation cease and desist letters, reminders concerning confidentiality obligations, and demand letters." Docket No. 158-5, p. 31. Allergan responded by objecting. *Id.* at 32.

**(e) <u>RFP No. 34</u>**

RFP No. 34 seeks "[a]ll communications with employers of former employees of [Allergan] concerning purported post-employment restrictive covenants since January 1, 2020. This Request includes without limitation cease and desist letters, reminders concerning confidentiality obligations, and demand letters." Docket No. 158-5, p. 32. Allergan responded by objecting. *Id.* at 32-33.

Revance contends that the information sought by these RFP is relevant because Allergan alleges "some of [its] former employees engaged in conduct, either directed or encouraged by Revance, aimed at maintaining access to the purported trade secrets as long as possible and for the benefit of Revance," and "[t]he communications Revance seeks, to the extent any exist, will show whether post-employment covenants existed, the terms of those covenants, and [Allergan's] interpretation or decision to enforce any such covenants." Docket No. 158-1, p. 12.

Allergan responds that it is "conducting reasonably diligent searches for such communications on these issues and will review and produce any that it locates." Docket No. 181, p. 17-18. Revance replies that while Allergan claims that it is searching for responsive documents,

it has yet to produce any.  Docket No. 182, p. 5.

There does not appear to be any dispute as to the relevance of the information sought by these RFP, and Allergan has not articulated any burden associated with production or any other reason why the information should not be produced.  *See* Docket Nos. 158-1, 181, 182.  Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

### (f) <u>RFP No. 35</u>

RFP No. 35 seeks "[a]ll communications with current or former employees of [Allergan] concerning alleged misappropriation of trade secrets since January 1, 2020."  Docket No. 158-5, p. 33.  Allergan responded by objecting.  *Id.*

Neither Revance nor Allergan specifically discuss this RFP in their briefs.  *See* Docket Nos. 158-1, 181.  Revance groups it with RFP No. 36 in its Reply, stating that Allergan's Response "is silent as to these Requests" and arguing that Allergan should "produce all such communications." Docket No. 182, p. 5.  In its portion of the Dispute Statement, Allergan states that it is conducting a reasonable search for documents responsive to RFP No. 35.  Docket No. 180, p. 7-8.

### (g) <u>RFP No. 36</u>

RFP No. 36 seeks "[a]ll communications with employers of [Allergan's] former employees concerning alleged misappropriation of trade secrets since January 1, 2020."  Docket No. 158-5, p. 33.  Allergan responded by objecting.  *Id.* at 33-34.

Revance contends that the information sought by RFP Nos. 35 and 36 is relevant because "[Allergan contends] several of [its] former employees misappropriated the purported trade secrets to benefit Revance," so "[c]ommunications with former employees and their employers, to the extent any exist, are highly probative of what [Allergan claims] was misappropriated, the

15

circumstances surrounding the alleged misappropriation and how [Allergan pursues] these sorts of allegations." Docket No. 158-1, p. 12.

Allergan's Response does not specifically address RFP Nos. 35 and 36. *See* Docket No. 181. In its portion of the Dispute Statement, Allergan states that it is conducting a reasonable search for documents responsive to RFP No. 36. Docket No. 180, p. 8. As mentioned above, Revance's Reply groups RFP Nos. 35 and 36 together and requests that the Court compel Allergan to produce documents in response to both. Docket No. 182, p. 5.

Allergan does not dispute the relevance of the information sought by these RFP, and the Court finds that it is relevant to the claims and defenses in this matter. Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

**(h) Interrogatory No. 12**

Interrogatory No. 12 requests that Allergan "[i]dentify all individuals [Allergan has] hired since July 2020 who previously worked for Revance, and state the date when the individual was hired." Docket No. 161, p. 29. Allergan responded by objecting and stating: "Plaintiffs will not respond to this Interrogatory based on objections, but are willing to meet and confer regarding the relevance and scope of this Interrogatory in relation to any claims or defenses in this action." *Id.* at 30.

Revance asserts that:

> On multiple occasions, [Allergan] re-hired the very same former employees [it alleges] misappropriated the purported trade secrets on behalf of Revance. In at least one known instance, [Allergan's] former employee retained Revance confidential and proprietary

16

> information after [Allergan] re-hired her. Revance is therefore entitled to discover the full scope of [Allergan's] hiring of Revance's former employees and whether those former Revance employees transmitted any Revance confidential information to [Allergan].

Docket No. 158-1, p. 12-13.

Allergan argues that "Revance has not identified—and cannot identify—any issue in this case to which such information is relevant." Docket No. 181, p. 18. Allergan maintains that "this case is about Revance's theft of *Allergan*'s trade secret information, not the other way around. Revance has not counterclaimed against Allergan for trade secret misappropriation, so whatever its former employee did or did not retain is not relevant to any claim in this case." *Id.* (emphasis in original).

Revance replies that this information "is relevant to [Allergan's] theory of 'employee raiding,' industry standards for hiring, and Revance's affirmative defense of unclean hands." Docket No. 182, p. 6.

Under the broad standard for relevance in discovery, the Court finds that the information sought by this interrogatory is relevant to the claims and defenses in this case, particularly Revance's unclean hands defense. *See* Docket No. 151, p. 23.

Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

**3. <u>Competitive Information Claimed by Revance to be Relevant to Affirmative Defenses</u>**

The discovery requests in this category are RFP Nos. 45, 46, 47, 48, 49, 50, 51, and 54. Docket No. 158, p. 1. Revance asserts:

17

> Revance's theory of this case is simple: [Allergan's] case is sham
> litigation intended to chill competition and stamp out a significant
> threat to [Allergan's] monopoly in the aesthetics market. Revance
> asserts several affirmative defenses to that effect, including the
> competition privilege (fifth affirmative defense) and unclean hands
> and/or *in pari delicto* (sixth affirmative defense). Revance seeks
> discovery from [Allergan] regarding [its] efforts to compete
> unfairly with Revance and, specifically, [Allergan's] motivations
> in doing so, all of which pertain to Revance's affirmative defenses.

Docket No. 158-1, p. 13.

### (a) <u>RFP No. 45</u>

RFP No. 45 seeks "[a]ll documents concerning actual or threatened competition faced by

[Allergan] as a result of Revance." Docket No. 158-5, p. 39. Allergan responded by objecting.

*Id.* at 40.

### (b) <u>RFP No. 47</u>

RFP No. 47 seeks "[a]ll documents from January 1, 2015[,] to present concerning

Revance, Revance's product offerings, or Revance's market share." Docket No. 158-5, p. 41.

Allergan responded by objecting. *Id.*

### (c) <u>RFP No. 48</u>

RFP No. 48 seeks "[a]ll documents from January 1, 2019[,] to present concerning

Daxxify (DaxibotulinumtoxinA-lanm)." Docket No. 158-5, p. 42. Allergan responded by

objecting. *Id.*

### (d) <u>RFP No. 49</u>

RFP No. 49 seeks "[a]ll documents from January 1, 2019[,] to present concerning the

RHA Collection, i.e., RHA 2, RHA 3, RHA 4, and RHA Redensity." Docket No. 158-5, p. 42.

Allergan responded by objecting. *Id.* at 42-43.

### (e) <u>RFP No. 50</u>

RFP No. 50 seeks "[a]ll documents sent to or received from the Food and Drug Administration (FDA) or other governmental agency concerning Revance from January 1, 2015[,] to present." Docket No. 158-5, p. 43. Allergan responded by objecting. *Id.*

**(f) <u>RFP No. 51</u>**

RFP No. 51 seeks "[a]ll communications with the FDA or other governmental agency concerning Revance, Revance's regulatory applications, or Revance's products from January 1, 2015[,] to present." Docket No. 158-5, p. 43. Allergan responded by objecting. *Id.* at 44.

**(g) <u>RFP No. 54</u>**

RFP No. 54 seeks "[a]ll communications with the FDA or other governmental agency or mentioning Daxxify." Docket No. 158-5, p. 46. Allergan responded by objecting. *Id.*

Revance contends that RFP 45, 46, 47, 48, and 49 seek information that "all pertains to [Allergan's] strategies and efforts to compete with Revance in the aesthetics marketplace and will better inform Revance's affirmative defenses." Docket No. 158-1, p. 14. As to RFP Nos. 50, 51, and 54, Revance contends that because Allergan specifically alleges that "Revance's 'unlawful scheme' to misappropriate the purported trade secrets resulted in 'the benefits of accelerated efforts to obtain FDA approval' and 'rapid commercial entry for Daxxify and the RHA Collection,'" "[w]hether [Allergan] transmitted any information or made any statements or characterizations of Revance and its products in [Allergan's] communications with the FDA or other agencies is highly probative of whether [Allergan] ever sought to block approval of Revance's products in an effort to chill competition." *Id.*

Allergan maintains that it has produced documents responsive to several of the RFP in this category. Docket No. 181, p. 18-19, *referencing* Docket No. 180. Allergan objects that the information sought in response to the Category 3 requests is "improper because [it rests] on

19

Revance's assertion that its unclean hands defense (the Sixth Affirmative Defense) is based on sham litigation. But the Court's April 29, 2024 Order forecloses that possibility." *Id.* at 19. Specifically, Allergan argues that "the Court ruled that Revance's unclean hands defense 'neither explicitly nor implicitly mentions . . . anything . . . that could reasonably be construed as fraud or mistake,'" and that the ruling "necessarily implies that Revance's unclean hands affirmative defense is not and cannot be based on the sham litigation exception because—as Revance itself admits—the sham litigation exception requires a finding of conduct akin to fraud . . . ." *Id.* at 19-20, *quoting* Docket No. 147, p. 13. Allergan asserts that "without sham litigation forming the basis of Revance's unclean hands defense, Revance's discovery demands into Allergan's subjective motivations are not 'relevant to any party's claim or defense' in this case." *Id.* at 20, *quoting* Fed. R. Civ. P. 26(b)(1). Additionally, Allergan argues that "[b]efore Revance may pursue discovery that is 'specifically' targeted at Allergan's 'motivations' for bringing this lawsuit, Revance must first establish that Allergan's lawsuit is objectively baseless. It has not done so (and cannot do so)." *Id.* at 21 (internal citation omitted).

Revance replies that:

> [Allergan attempts] to repackage the merits arguments [it] raised in [its] Motion to Strike Revance's Affirmative Defenses (ECF No. 95) to frustrate Revance's efforts to obtain discovery on those affirmative defenses. As a general principle, a party is entitled to seek discovery that is "relevant to the claims and **defenses** in this matter." ECF No. 141 at 6 (emphasis added) . . . . Whatever gripes [Allergan has] with the Court's decision denying the Motion to Strike, the fact remains the Court allowed Revance's Fifth and Sixth Affirmative Defenses to stand and granted Revance leave to amend its Fourth Affirmative Defense (which Revance did). In fact, the Court held resolution of those affirmative defenses 'will involve extensive analysis *based on facts* that are not currently before the Court.' ECF No. 147 at 10 (emphasis added). Revance now seeks discovery regarding these facts.

Docket No. 182, p. 6-7.

The Court agrees. Revance's Fifth and Sixth Affirmative Defenses read as follows:

### FIFTH AFFIRMATIVE DEFENSE

Allergan's claims are barred, in whole or in part, by the competition privilege because Revance's conduct was, at all relevant times, done in the context of fair competition and in good faith.

### SIXTH AFFIRMATIVE DEFENSE

Allergan's equitable claims are barred by the doctrine of unclean hands and/or in par[i] delicto because the claims were brought and maintained in bad faith to chill competition.

Docket No. 151, p. 23. As can be seen, the above RFP seek information related to these defenses. As it indicated in its prior Order, the Court will not adjudicate the viability of Revance's defenses at the discovery stage. Docket No. 147, p. 10. The scope of relevance in discovery is broad in part because early in litigation, it is not clear which claims and defenses will prevail; additional information is needed to allow the Parties to make their best cases and give the trier of fact the most information upon which to base a decision. These decisions will be made (and Allergan's arguments regarding the applicability of the Noerr-Pennington doctrine and the sham litigation exception considered) at a later stage in this litigation. Beyond these arguments, Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

**(h) RFP No. 46**

RFP No. 46 seeks "[a]ll documents concerning any loss or expected loss of customers, revenue, or market share as a result of competition by Revance, from January 1, 2015, to present." Docket No. 158-5, p. 40. Allergan responded by objecting and by agreeing to produce

"to the extent it understands this Request . . . any non-privileged documents upon which [Allergan] will rely to prove damages." *Id.* at 40-41.

Revance contends that the Court should require Allergan to produce documents responsive to RFP No. 46 because Allergan alleges that it has "sustained 'severe competitive harm' and request[s] injunctive relief because [its] business operates in a 'competitive market' and RFP No. 46 seeks information that pertains to Allergan's alleged damages. Docket No. 158-1, p. 14, *quoting* Docket No. 1. Allergan's Response does not specifically address RFP No. 46. *See* Docket No. 181. In its portion of the Joint Dispute Statement, Allergan asserts that it has already produced documents responsive to this request, and objects to the extent that Revance seeks information "based on the assertion that sham litigation is the basis for Revance's unclean hands defense . . . ." Docket No. 180, p. 9.

Under the broad standard for relevance in discovery, the Court finds that the information sought by RFP No. 46 is relevant to the claims and defenses in this matter, specifically Allergan's claim that it has sustained severe competitive harm. Docket No. 1, p. 33. Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance.

## III. CONCLUSION

For the foregoing reasons, Revance's Motion (Docket No. 158) is GRANTED IN PART. The Court has considered all of the proportionality factors set forth in Rule 26(b) and finds that the requested discovery, as narrowed by the Parties and above by the Court, is proportional to the needs of the case. This is particularly true because Allergan has not demonstrated the existence

22

of any undue burden associated with production (and in the instances where Allergan has argued that there is a burden, the Court has modified the request to lessen the burden). The Court has also considered Allergan's concerns regarding confidential information and finds that those concerns can be addressed through the measures adopted by the Parties in their Agreed Protective Order.[3] Docket No. 74. Therefore, no later than September 30, 2024, Allergan must produce the documents and information specified above.

**IT IS SO ORDERED.**

**Jeffery S. Frensley**
**United States Magistrate Judge**

---

[3] Privileged information can, of course, be addressed through use of a privilege log.