**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| Allergan, Inc.,<br>Allergan Pharmaceuticals Ireland<br>Unlimited Company, Allergan USA, Inc.,<br>and Allergan Sales, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>Revance Therapeutics, Inc.,<br><br>    Defendant. | Civil Action No. 3:23-cv-00431<br><br>District Judge Eli J. Richardson<br>Magistrate Judge Jeffrey S. Frensley |

## <u>DEFENDANT REVANCE THERAPEUTICS, INC.'S MOTION FOR CONTEMPT SANCTIONS REGARDING PLAINTIFFS' FAILURE TO COMPLY WITH SEPTEMBER 16, 2024 ORDER</u>

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................ 2

    A.    The September 16th Order. ....................................................................... 2

    B.    Before The Court-Ordered Deadline Passed, Revance Identified Defects In Allergan's Stated Efforts To Comply. ................................................... 6

III. RELEVANT LEGAL STANDARD ................................................................ 7

IV. ARGUMENT ................................................................................................... 8

    A.    Allergan Ignored The Order's Deadline. ............................................... 8

    B.    Allergan Unilaterally Narrowed The Order. ......................................... 10

    C.    Allergan Has Declined To Certify It Produced *All* Responsive Documents. ....... 12

    D.    The Court Should Order Allergan Pay Revance's Fees Caused By The Failure.. 13

V. CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Austin Elec. Servs. LLC*,
    325 F.R.D. 322 (D. Ariz. 2018) ........................................................................12

*Anderson v. Beatrice Foods Co.*,
    900 F.2d 388 (1st Cir. 1990) ..............................................................................9

*Bentley v. Cywes*,
    No. 2:22-CV-4189, 2024 WL 3066077 (S.D. Ohio June 20, 2024) ......................14

*Carpenter v. City of Flint*,
    723 F.3d 700 (6th Cir. 2013) ............................................................................14

*Doe v. Lexington-Fayette Urb. County Gov't*,
    407 F.3d 755 (6th Cir. 2005) ........................................................................8, 13

*Doe v. Mast*,
    No. 3:22CV00049, 2024 WL 3371122 (W.D. Va. July 10, 2024) ..................10, 12

*Flame S.A. v. Indus. Carriers, Inc.*,
    39 F. Supp. 3d 752 (E.D. Va. 2014) ....................................................................9

*Green v. John Chatillon & Sons*,
    188 F.R.D. 422 (M.D.N.C. 1998), *aff'd*, 165 F.3d 18 (4th Cir. 1998) ...................9

*Harmon v. CSX Transp., Inc.*,
    110 F.3d 364 (6th Cir. 1997) ............................................................................14

*JPMorgan Chase Bank, N.A. v. Neovi, Inc.*,
    2007 WL 1875928 (S.D. Ohio June 20, 2007) ......................................................8

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
    254 F.R.D. 463 (M.D. Fla. 2008), *aff'd on other grounds*, 254 F.R.D. 470
    (M.D. Fla. 2008) ..............................................................................................10

*Metts v. Airtran Airways, Inc.*,
    Civ. No. DKC 10-466, 2010 WL 4183020 (D. Md. Oct. 22, 2010) ........................9

*NHL v. Metro. Hockey Club*,
    427 U.S. 639 (1976) ..........................................................................................7

*Nozinich v. Johnson & Johnson, Inc.*,
    No. 09-02105, 2011 WL 13124086 (W.D. Tenn. Apr. 4, 2011) ..........................12

Case 3:23-cv-00431    Document 267    Filed 11/06/24    Page 3 of 22 PageID #: 4810

*Pierce v. Underwood*,
487 U.S. 552 (1988)............................................................................................8, 13

*Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*,
No. 1:16-CV-10317, 2023 WL 1452062 (E.D. Mich. Feb. 1, 2023), *objections overruled*, 683 F. Supp. 3d 645 (E.D. Mich. 2023), *reconsideration denied*,
685 F. Supp. 3d 525 (E.D. Mich. 2023)..................................................................14

*Sutton v. Gandhu*,
No. 22-CV-2870, 2023 WL 5019911 (W.D. Tenn. Aug. 7, 2023).........................14

*TBC, Inc. v. DEI Sales, Inc.*,
No. CCB-14-3644, 2017 WL 4151261 (D. Md. Sept. 19, 2017)............................10

*Victor v. Reynolds*,
649 F. Supp. 3d 499 (E.D. Mich.), *reconsideration denied*, 678 F. Supp. 3d
940 (E.D. Mich. 2023) ...........................................................................................12

*Villareal v. El Chile, Inc.*,
266 F.R.D. 207 (N.D. Ill. 2010)...............................................................................10

*Youn v. Track, Inc.*,
324 F.3d 409 (6th Cir. 2003) .....................................................................................7

**Other Authorities**

Fed. R. Civ. P. 37(b)(2)(A)...............................................................................................7

# I. INTRODUCTION

On September 16, 2024, the Court ordered Allergan to produce a variety of documents, "no later than September 30, 2024." ECF No. 204 (the "Order") at 23. Allergan failed to comply. With respect to certain categories of documents, Allergan ignored the Court's Order to produce "any nonprivileged documents," and instead conducted only limited searches for responsive documents. Moreover, Allergan has simply ignored the Order's September 30 deadline; after the deadline passed, it acknowledged it still has not completed its review and production of the documents subject to the Court's Order. With respect to other categories, Allergan refuses to confirm whether its production is complete, only coyly responding that it had produced some responsive documents after "a reasonable inquiry and diligent search" and leaving Revance to guess whether there might be others.

In tacit recognition of its failure to comply with the Court's Order, Allergan has tried to reverse the burden, demanding *Revance* tell *Allergan* what *Allergan* documents it has not produced. For obvious reasons, this is unfair and undermines the Court's order, which requires Allergan to undertake the search and production in good faith. The Court's Order did not require Revance to specify the documents Allergan was to produce; it ordered Allergan to produce the categories of documents identified in Revance's requests.

Obeying court orders is paramount, and a party's failure to do so subjects it to mandatory monetary sanctions under Rule 37(b)(2)(C). Accordingly, and for the reasons more fully explained below, Revance asks the Court to sanction Allergan for failure to comply with its Order, again direct Allergan to comply in full with the Order, and award Revance its reasonable attorneys' fees and costs incurred due to Allergan's noncompliance.

1

## II. BACKGROUND

**A.** **THE SEPTEMBER 16TH ORDER.**

The Court ordered that "no later than September 30, 2024, Allergan must produce the documents and information specified above [in the Order]." ECF No. 204 at 23. Specifically, the Court ordered Allergan produce all documents responsive to Requests for Production 5, 29, 30, 32, 33, 34, 35, 36, 45, 46, 47, 48, 49, 50, 51 and 54. As for Request No. 23, the Court ordered Allergan to cooperate with Revance in determining appropriate search terms and custodians, a process that remains ongoing. The Court also ordered Allergan to supplement its responses to Interrogatory Nos. 3 and 12.

For ease of reference, Revance reprints the relevant Requests and Court's Order relative to the Requests below:

| No. | Request | Court's Order |
|---|---|---|
| **Category One: Measures Taken by Allergan to Protect Information it Claims as Trade Secrets** | | |
| 5 | All versions of any employment agreements, confidentiality agreements, assignment agreements, non-compete agreements, or other agreements that Plaintiffs require or have required employees to execute as a condition of employment since 2010. | "To the extent that Allergan has not already done so, it must conduct a reasonable search for any employee confidentiality agreements executed since January 1, 2010, and produce them to Revance." ECF No. 204 at 8. |
| **Category Two: Allergan's Current and Former Employees** | | |
| 29 | The complete personnel file (or the equivalent Plaintiffs maintain) for each of the former Allergan employees listed in Appendix I. | "Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 12. |
| 30 | All employment agreements, confidentiality agreements, and/or restrictive covenant agreements for each of the former Allergan employees listed in Appendix I. | "Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 12. |
| 32 | All documents concerning the departure from Allergan of any former Allergan employee listed in Appendix I. | "The Court finds that information about the departure from Allergan of those employees that Allergan has identified as having left Allergan for Revance is relevant to the claims and defenses in this matter, specifically |

| No. | Request | Court's Order |
|-----|---------|---------------|
| | | Allergan's claim that Revance engaged in employee raiding to gain access to Allergan's trade secrets and Revance's defense that it did not engage in such conduct. *See* Docket Nos. 1, 151. Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket No. 181. Therefore, to the extent that any nonprivileged documents that are responsive to RFP No. 32 are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 13-14. |
| 33 | All communications with current or former employees of Plaintiffs concerning purported post-employment restrictive covenants since January 1, 2020. This Request includes without limitation cease and desist letters, reminders concerning confidentiality obligations, and demand letters. | "There does not appear to be any dispute as to the relevance of the information sought by these RFP, and Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 15. |
| 34 | All communications with employers of former employees of Plaintiffs concerning purported post-employment restrictive covenants since January 1, 2020. This Request includes without limitation cease and desist letters, reminders concerning confidentiality obligations, and demand letters. | "There does not appear to be any dispute as to the relevance of the information sought by these RFP, and Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. See Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 15. |
| 35 | All communications with current or former employees of Plaintiffs concerning alleged misappropriation of trade secrets since January 1, 2020. | "Allergan does not dispute the relevance of the information sought by these RFP, and the Court finds that it is relevant to the claims and defenses in this matter. Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 16. |
| 36 | All communications with employers of Plaintiffs' former employees concerning alleged misappropriation of trade secrets since January 1, 2020. | "Allergan does not dispute the relevance of the information sought by these RFP, and the Court finds that it is relevant to the claims and defenses in this matter. Allergan has not articulated any burden |

| No. | Request | Court's Order |
|-----|---------|---------------|
| | | associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 16. |
| | **Category Three**: Competitive Information Claimed by Revance to be Relevant to Affirmative Defenses | |
| 45 | All documents concerning actual or threatened competition faced by Plaintiffs as a result of Revance. | "As can be seen, the above RFP seek information related to these defenses. As it indicated in its prior Order, the Court will not adjudicate the viability of Revance's defenses at the discovery stage. Docket No. 147, p. 10. The scope of relevance in discovery is broad in part because early in litigation, it is not clear which claims and defenses will prevail; additional information is needed to allow the Parties to make their best cases and give the trier of fact the most information upon which to base a decision. These decisions will be made (and Allergan's arguments regarding the applicability of the *Noerr-Pennington* doctrine and the sham litigation exception considered) at a later stage in this litigation. Beyond these arguments, Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 21. |
| 46 | All documents concerning any loss or expected loss of customers, revenue, or market share as a result of competition by Revance, from January 1, 2015 to present. | "Under the broad standard for relevance in discovery, the Court finds that the information sought by RFP No. 46 is relevant to the claims and defenses in this matter, specifically Allergan's claim that it has sustained severe competitive harm. Docket No. 1, p. 33. Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 22. |
| 47 | All documents from January 1, 2015 to present concerning Revance, Revance's | "As can be seen, the above RFP seek information related to these defenses. As it indicated in its prior Order, the |

| No. | Request | Court's Order |
|---|---|---|
| | product offerings, or Revance's market share. | Court will not adjudicate the viability of Revance's defenses at the discovery stage. Docket No. 147, p. 10. The scope of relevance in discovery is broad in part because early in litigation, it is not clear which claims and defenses will prevail; additional information is needed to allow the Parties to make their best cases and give the trier of fact the most information upon which to base a decision. These decisions will be made (and Allergan's arguments regarding the applicability of the *Noerr-Pennington* doctrine and the sham litigation exception considered) at a later stage in this litigation. Beyond these arguments, Allergan has not articulated any burden associated with production or any other reason why the information should not be produced. *See* Docket Nos. 158-1, 181, 182. Therefore, to the extent that any nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 21. |
| 48 | All documents from January 1, 2019 to present concerning Daxxify (DaxibotulinumtoxinA-lanm). | See above. |
| 49 | All documents from January 1, 2019 to present concerning the RHA Collection, i.e., RHA 2, RHA 3, RHA 4, and RHA Redensity. | See above. |
| 50 | All documents sent to or received from the Food and Drug Administration (FDA) or other governmental agency concerning Revance from January 1, 2015 to present. | See above. |
| 51 | All communications with the FDA or other governmental agency concerning Revance, Revance's regulatory applications, or Revance's products from January 1, 2015 to present. | See above. |
| 54 | All communications with the FDA or other governmental agency concerning or mentioning Daxxify. | See above. |

**B.** **BEFORE THE COURT-ORDERED DEADLINE PASSED, REVANCE IDENTIFIED DEFECTS IN ALLERGAN'S STATED EFFORTS TO COMPLY.**

On September 25, 2024, Allergan's counsel wrote to Revance's counsel (unprompted) to "confirm compliance" with the Court's order. **Exhibit A**, 2024.09.25 A. Roberts Letter to J. Dean. The letter outlined various searches Allergan said it intended to conduct as part of its plan to comply with the Order. Contrary to the Court's Order, however, Allergan tried to put the onus on Revance to "explain what documents or types of documents Revance believes are missing from Allergan's productions and/or searches." **Ex. A**, at 1, 3. The September 25 letter also included certain search terms and date limitations that, according to Allergan, it "underst[ood] to be directed at documents that would be responsive to these requests." *Id.* at 2. Those search terms were wholly inadequate to meet the full scope of the Court's Order because they simply tracked the limitations on the scope of the search that led to Revance's Motion to Compel in the first place, limitations the Court's Order had already overruled.

On September 26, 2024, Revance responded to Allergan to explain Allergan's stated plan was inadequate. **Exhibit B**, 2024.09.26 G. Bombard Ltr. to A. Roberts. It pointed out various specific inadequacies in Allergan's plan and insisted on Allergan's full compliance with the Court's Order.

Allergan did not address the points raised in Revance's September 26 letter before the Court-ordered September 30 deadline passed.

**C.** **ALLERGAN FAILS TO COMPLY WITH THE COURT'S ORDER.**

On September 30, 2024, Allergan produced just 624 pages of documents (without metadata) and unverified interrogatory responses. **Exhibit C**, 2024.10.01 J. Jordan Email to Revance Counsel. Despite the September 25 letter outlining the search terms Allergan proposed to use to capture documents subject to the Order, Allergan suddenly reversed course: It claimed

"Allergan's search for documents responsive to the RFPs that were subject to the September 30 production date did not require search terms." **Exhibit D**, 2024.10.02 A. Roberts Email to Revance Counsel. After receiving Allergan's various (and inconsistent) responses and observing Allergan's non-compliance, Revance wrote Allergan again, insisting it comply with the Court's order. **Exhibit E**, 2024.10.18 G. Bombard Ltr. to A. Roberts.

Allergan tries to claim document productions from earlier in 2024 (before the Court's Order) contained some documents within the scope of the Court's Order. But Allergan steadfastly refuses to certify it has produced *all* documents the Court ordered produced. Indeed, Allergan concedes in correspondence it is still undertaking searches that will yield documents covered by the Order. **Exhibit F**, 2024.10.31 A. Roberts Ltr. to Revance Counsel.

## III. <u>RELEVANT LEGAL STANDARD</u>

Rule 37(b) governs sanctions for a party's failure to comply with a discovery order. The imposition of sanctions and the type of sanctions imposed are matters within the court's sound discretion based on the facts of each particular case. *See NHL v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976). "If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). The "further just orders" includes seven remedies for a party's non-compliance, such as "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]" *Id.* In the Sixth Circuit, a court generally need not make a finding of bad faith before sanctioning a party under Rule 37. *Youn v. Track, Inc.*, 324 F.3d 409, 421 (6th Cir. 2003).

7

Where, as here, the non-compliance is not "substantially justified," the court "*must* order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure[.]" FED. R. CIV. P. 37(b)(2)(C) (emphasis added). "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). An action is substantially justified "if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urb. County Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce*, 487 U.S. at 552)). Importantly, Rule 37(b)(2)(C) monetary sanctions do not require bad faith. *JPMorgan Chase Bank, N.A. v. Neovi, Inc.*, 2007 WL 1875928, at *5 (S.D. Ohio June 20, 2007).

## IV. ARGUMENT

Allergan violated the Court's Order in two ways. First, Allergan ignored the Court's September 30 deadline: It admits it has not completed the review and production of documents called for by the Order. Second, Allergan limited the scope of its search and production in a way not supported by the scope of the Court's Order. Allergan maintained the very objections the Court overruled and self-servingly narrowed the Order to exclude highly relevant and responsive documents.

### A. ALLERGAN IGNORED THE ORDER'S DEADLINE.

By Allergan's own admission, it failed to comply with the Court-ordered September 30, 2024 production deadline. On October 31, 2024, responding to a letter from Revance about its non-compliance with the Court-ordered deadline of September 30, Allergan wrote that its "review and production of documents located using the agreed ESI search terms *is ongoing*, and we will continue to produce documents on [an unspecified] rolling basis." **Ex. F** at 4 (emphasis added). It also promised to "supplement its production" with some unspecified documents at an unspecified

future date. *Id.* at 2, 3. In addition, before the deadline, Allergan disclosed certain ESI search parameters it "underst[ood] to be directed at documents that would be responsive to these requests" with Category 3.[1] **Ex. A** at 2. It thus appears Allergan has also failed to produce documents resulting from even this narrowed, patently insufficient search.

"Courts cannot function smoothly if parties, and counsel, ignore the rules, overlook due dates, or flout court orders. In this sense, sanctions may be a useful tool in vindicating the court's authority, reminding those who need reminding of the protocol, and ensuring orderliness in the judicial process." *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395 (1st Cir. 1990). "[C]ourt deadlines are not mere suggestions or guideposts," and a court may sanction a party's unexcused failure to abide by them. *Metts v. Airtran Airways, Inc.*, Civ. No. DKC 10-466, 2010 WL 4183020, at *3 (D. Md. Oct. 22, 2010).

A party's belated compliance with a court-imposed deadline in an order granting a motion to compel "does not constitute compliance." *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 761 (E.D. Va. 2014); *see Green v. John Chatillon & Sons*, 188 F.R.D. 422, 424 (M.D.N.C. 1998), *aff'd*, 165 F.3d 18 (4th Cir. 1998) (finding discovery violation where plaintiff failed to provide discovery request two months after being ordered to do so). *Flame S.A.* is instructive. In *Flame S.A.*, the magistrate judge ordered certain emails produced by May 7, 2014 based on the plaintiffs' motion to compel. *Id.* Thereafter, the defendant produced some responsive documents required by the order but did not produce all responsive emails until two months later, on July 14. The district court held the production "was simply too late and therefore noncompliant." *Id.* Other courts have similarly held that a party's failure to produce all documents by a court-ordered

---

[1] The Joint Discovery Plan obligates producing parties to disclose the search terms it uses to located potentially responsive ESI. ECF No. 223 at¶ 8(d).

deadline "clearly and convincingly demonstrates that they violated" a court order. *Doe v. Mast*, No. 3:22CV00049, 2024 WL 3371122, at *15 (W.D. Va. July 10, 2024).

In addition, despite the Court-ordered deadline, Allergan failed to provide the interrogatory responses under oath. Rule 33(b)(3) provides that "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing *under oath*." (emphasis added). This is not a suggestion; the federal rules require verification. *See Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) ("Under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney."); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 466 (M.D. Fla. 2008), *aff'd on other grounds*, 254 F.R.D. 470 (M.D. Fla. 2008) (verification requirement applies to supplemental responses as well as original responses). To date, Allergan has not verified its supplemental responses to Interrogatory Nos. 3 and 12.

## B.  ALLERGAN UNILATERALLY NARROWED THE ORDER.

Allergan unilaterally imposed limitations on the scope of the Order and therefore refuses to comply with it. Allergan "appears to have substituted its own judgment for the court's" in deciding it need not comply in full with the Order. *See TBC, Inc. v. DEI Sales, Inc.*, No. CCB-14-3644, 2017 WL 4151261, at *7 (D. Md. Sept. 19, 2017). A party proceeds at its own risk when it rewrites an order. Excuses for non-compliance or other narrowing "should [be] raised in a direct challenge to the order, rather than as a defense to non-compliance with its terms." *Id.* at *7 n.9.

With respect to Request for Production 32 the Court ordered Allergan to produce "***any*** nonprivileged documents that are responsive to RFP No. 32 are within Allergan's possession, custody, or control, Allergan must produce them to Revance." ECF No. 204 at 13-14 (emphasis added). Request 32 sought "All documents concerning the departure from Allergan of any former Allergan employee listed in Appendix I." ECF No. 158-2 at 9. The Order *expressly rejected*

Allergan's proposal to limit its production on this subject to only those documents within the former employees' personnel files. *See* ECF No. 204 at 13. But Allergan limited its production to only those documents within the personnel files of the former Allergan employees. **Ex. A** at 1. Obviously, this limitation excludes a variety of documents the Court already ruled were relevant. For example, it omits communications about a reduction in force, communications about an employee's voluntary or involuntary termination, communications about transitioning work to other employees, departure reminders to departing employees, as well as other categories of documents.

With respect to RFPs 45-51 and 54, the Court ordered Allergan to produce "***any*** nonprivileged documents that are responsive to these RFP are within Allergan's possession, custody, or control." ECF No. 204 at 21 (emphasis added). The Order *expressly rejected* Allergan's proposed limitations because adjudication of Revance's affirmative defenses should be based on facts. ECF No. 204 at 19-20. But Allergan persists, limiting its production to "business-planning documents, including long-range planning (LRP) presentations, business reviews, growth analyses, and target populations that it was able to locate after a reasonably diligent search." **Ex. A** at 2. This made-up limitation, directly contrary to the Court's Order, makes sure communications by Allergan's personnel regarding Revance and its products don't come to light. Allergan's limitation omits emails, chats, or other documents discussing Revance (documents clearly within the scope of the Court's Order) in favor of a limited set of canned, sanitized presentations.

Allergan's attempt to avoid compliance with the Order extends to temporal scope. The Court ordered Allergan to produce documents responsive to Revance's Requests for Production 46, 47, 50, and 51 since January 1, 201**5**. *See* ECF No. 158-2 at 15-20; ECF No. 158-3 at 7-8. Yet

in Allergan's letter dated September 25, 2024, Allergan said it was only running searches starting as of January 1, 201**8**—effectively (and unilaterally) excluding three years' worth of information encompassed in the Order. **Ex. A** at 2. Well after the compliance deadline passed, Allergan apparently reversed itself, stating, "Allergan is expanding the date range of these searches . . . ." **Ex. F** at 3. This abrupt about-face *concedes* Allergan's failure to comply with the Court's Order by the deadline.

Allergan's post-hoc narrowing of discovery the Court has already ordered Allergan produce leaves Revance no choice but to file this Motion: "sanctions are the exclusive vehicle through which the Court may enforce a prior order compelling discovery. *Victor v. Reynolds*, 649 F. Supp. 3d 499, 514 (E.D. Mich.), *reconsideration denied*, 678 F. Supp. 3d 940 (E.D. Mich. 2023) (citing *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 322, 324-25 (D. Ariz. 2018)); *Nozinich v. Johnson & Johnson, Inc.*, No. 09-02105, 2011 WL 13124086, at *2 (W.D. Tenn. Apr. 4, 2011)).

**C.      ALLERGAN HAS DECLINED TO CERTIFY IT PRODUCED *ALL* RESPONSIVE DOCUMENTS.**

Following the self-serving limitations, inconsistencies, and untimeliness outlined above, Revance repeatedly asked Allergan to certify it produced "any nonprivileged documents" subject to the Order. In response, Allergan has only repeated a cryptic line that it has "produced responsive documents" or, in a more recent iteration, that it produced documents "it has been able to locate after a reasonable inquiry and diligence search." *See* **Ex. F** at 2. But producing some responsive documents is very different from producing *all* responsive documents. *See Mast*, 2024 WL 3371122, at *14 ("All meant *all*—it did not mean '*substantially* all' or 'a *near* complete production' of previously unproduced responsive materials."). And Allergan fails to provide the scope of its supposed "reasonable inquiry and diligent search." Indeed, Allergan has flip flopped on even whether its "diligent search" would include the ESI search terms. *See* **Exhibit D**,

2024.10.02 A. Roberts Email to Revance Counsel ("Allergan's search for documents responsive to the RFPs that were subject to the September 30 production date did not require search terms.").

The Order did not authorize Allergan to pick and choose the "responsive documents" it chose to produce. Rather, it directed Allergan to produce "any nonprivileged documents." After being forced to seek a court order compelling production of these documents, Revance should not be forced to simply accept Allergan's conclusory statement that there is "nothing to see here." Of course, Allergan's refusal to certify its compliance can only lead to the conclusion that Allergan has *not* produced "any nonprivileged documents" as the Order requires.

## D.    THE COURT SHOULD ORDER ALLERGAN PAY REVANCE'S FEES CAUSED BY THE FAILURE.

Allergan violated the Order, and it did so without substantial justification. It did not comply with the Order's September 30 deadline. And Allergan unilaterally attempted to substitute its own judgment in place of the Court's order, in some instances with the gall of even reiterating the same positions the Court considered and overruled in the Order. Reasonable persons could not differ as to the appropriateness of Allergan's actions. *See Lexington-Fayette Urb. County Gov't*, 407 F.3d at 765 (quoting *Pierce*, 487 U.S. at 552). The fact is, it failed to comply with the Order. For example, Allergan admits it failed to produce the documents subject to the Order by September 30 (or even as of the date of this filing, more than 30 days later). Allergan unilaterally lopped three full years off of the timeframe provided in the Court's Order and still has not produced the responsive documents from 2015-2017.

Revance has incurred significant expense due to Allergan's contempt for the Court's Order. It had to send multiple letters to Allergan seeking voluntary compliance short of filing this Motion. Eventually, Allergan's refusal forced Revance to file this Motion. Revance never should have been forced to incur *additional* fees on top of those it had to expend in connection with the original

13

Motion to Compel. Moreover, "[a] defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is 'required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)). Allergan's failure to timely comply with the Order has needlessly backed up other discovery in this case. Under the current scheduling order, fact discovery should be drawing to a close, but Allergan still has not produced basic documents concerning its allegations.

In similar cases, when a party fails to produce documents pursuant to a court order or meet deadlines, district courts in the Sixth Circuit have levied monetary sanctions. *See, e.g.*, *Bentley v. Cywes*, No. 2:22-CV-4189, 2024 WL 3066077, at *3-5 (S.D. Ohio June 20, 2024) (granting sanction of reasonable attorney's fees for party's failure to produce documents court ordered be disclosed); *Sutton v. Gandhu*, No. 22-CV-2870, 2023 WL 5019911, at *2 (W.D. Tenn. Aug. 7, 2023) (finding award of attorneys' fee "just" where defendant suffered needless delay of months before obtaining discovery materials and incurring additional attorneys' fees to force plaintiff to comply with his discovery obligation); *Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, No. 1:16-CV-10317, 2023 WL 1452062, at *10 (E.D. Mich. Feb. 1, 2023), *objections overruled*, 683 F. Supp. 3d 645 (E.D. Mich. 2023), *reconsideration denied*, 685 F. Supp. 3d 525 (E.D. Mich. 2023) (finding court "must" impose sanctions in form of payment of attorneys' fees and costs incurred due to failure to comply with discovery order).

Accordingly, Revance asks the Court to order Allergan to compensate Revance for bringing the instant Motion for Sanctions.[2]

---

[2] The Court should set a date certain by which Revance may submit an evidentiary petition in support of its request for attorneys' fees and costs.

# V. CONCLUSION

The Order set a firm deadline for compliance, with which Allergan has not fully complied. The Order required the production of "***any*** nonprivileged documents" (emphasis added) responsive to a variety of Revance's requests for production, which Allergan refuses to say it did. Allergan's continued foot-dragging prejudices Revance's ability to fairly conduct discovery in this case.

Therefore, the Court should order that within seven days, Allergan (1) produce "any nonprivileged documents" within its possession, custody, or control subject to the Order; (2) certify that no further responsive documents exist; and (3) detail the specific steps it took to comply with the Order, including all custodians searched and search terms used (if any) to ensure compliance. Furthermore, the Court should award Revance its reasonable attorneys' fees and costs incurred due to Allergan's recalcitrance in complying with the Order.

*Of Counsel:*

*/s/ James N. Boudreau*
James N. Boudreau
GREENBERG TRAURIG, LLP
Three Logan Square
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Phone: (215) 988-7833
Fax: (215) 717-5209
Email: James.Boudreau@gtlaw.com

Gregory S. Bombard
Diana A. Balluku
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Phone: (617) 310-6000
Fax: (617) 310-6001
Email: gregory.bombard@gtlaw.com
Email: diana.balluku@gtlaw.com

Justin K. Victor
Jacob R. Dean
GREENBERG TRAURIG, LLP
TERMINUS 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Phone: (678) 553-2100
Fax: (678) 553-2212
Emails: victorj@gtlaw.com
         deanj@gtlaw.com


DATED: November 6, 2024

Respectfully submitted,

REVANCE THERAPEUTICS, INC.

By its Attorneys:

Katie Molloy
Tennessee Bar No. 26877
Greenberg Traurig, P.A.
101 East Kennedy Boulevard
Suite 1900
Tampa, FL 33602
Phone: (813) 318-5710
Email: molloyk@gtlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of **DEFENDANT REVANCE THERAPEUTICS, INC.'S MOTION FOR SANCTIONS** was served on all counsel of record in this case via CM/ECF on this 6 day of November, 2024.

Andrea Pallios Roberts
Paul Hastings LLP
1117 S. California Avenue
Palo Alto, CA 94304
Email: andrearoberts@paulhastings.com

Carl J. Minniti, III
Paul Hastings LLP (NY Office)
200 Park Avenue
New York, NY 10166
Email: carlminniti@paulhastings.com

Eric W. Dittmann
Paul Hastings LLP (NY Office)
200 Park Avenue
New York, NY 10166
Email: ericdittmann@paulhastings.com

James V. Razick
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Email: jamesrazick@paulhastings.com

Jarryd Cooper
Paul Hastings LLP (CA Office)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
Email: jarrydcooper@paulhastings.com

Jeff A. Pade
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Email: jeffpade@paulhastings.com

Jennifer Baldocchi

Paul Hastings LLP (CA Office)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
Email: jenniferbaldocchi@paulhastings.com

Lindsey C. Jackson
Paul Hastings LLP (CA Office)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
Email: lindseyjackson@paulhastings.com

Matthew S. Aibel
Paul Hastings LLP (NY Office)
200 Park Avenue
New York, NY 10166
Email: matthewaibel@paulhastings.com

Melanie R. Rupert
Paul Hastings LLP (NY Office)
200 Park Avenue
New York, NY 10166
Email: melanierupert@paulhastings.com

Richard Rothman
Paul Hastings LLP
2050 M Street NW
Washington, DC 20036
Email: richardrothman@paulhastings.com

William A. Blue, Jr.
Constangy, Brooks, Smith, & Prophete, LLP (Nashville Office)
750 Old Hickory Boulevard
Ste 260-2
Brentwood, TN 37027
(615) 320-5200
Fax: (615) 321-5891
Email: wblue@constangy.com

*/s/ James N. Boudreau*
James N. Boudreau