**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **ALLERGAN, INC., ALLERGAN** ) | |
| **PHARMACEUTICALS IRELAND,** ) | |
| **UNLIMITED COMPANY, ALLERGAN** ) | |
| **USA, INC., AND ALLERGAN SALES, LLC** ) | Civil Action No. 3:23-cv-00431 |
| **Plaintiffs,** ) | Judge Richardson/Frensley |
| ) | |
| v. ) | |
| ) | |
| **REVANCE THERAPEUTICS, INC.** ) | |
| **Defendant.** ) | |

**ORDER OF THE SPECIAL MASTER REGARDING REVANCE'S ESI SUBMISSION,**
**REVANCE'S SHAM LITIGATION SUBMISSION, AND THE SPECIAL MASTER'S**
**REQUEST FOR SUPPLEMENTAL BRIEFING**

This case comes before the Special Master on Defendant Revance Therapeutics, Inc.

("Defendant" or "Revance")'s February 19, 2025, joint submission to the Special Master regarding

electronically stored information ("ESI") custodians and search terms ("Revance's ESI

Submission"),[1] and Revance's "issue number 2" in the parties' January 13, 2025, joint submission

to the Special Master regarding discovery requests related to Revance's sham litigation defense

("Revance's Sham Litigation Submission").[2] Upon consideration of the parties' briefing regarding

Revance's ESI Submission and Revance's Sham Litigation Submission, as well as the exhibits

submitted in support of the arguments made in that briefing, the Special Master:

1. Grants in part, denies in part, and defers in part the requests made in Revance's ESI
   Submission.

---

[1]     Revance's ESI Submission itself and all exhibits submitted therewith are being filed on the docket as separate docket entries contemporaneously with this Order.

[2]     The parties' briefing relating to Revance's Sham Litigation Submission, as well as the exhibits attached thereto, are being filed on the docket as separate docket entries contemporaneously with this Order. The parties originally submitted this briefing to the Special Master as exhibits 2 and 3 to the January 13, 2025 joint submission.

1

2. Grants in part, denies in part, and defers in part the requests made in Revance's Sham Litigation Submission.

As discussed below, the Special Master also requests supplemental briefing on the issues it has deferred in this Order and on one point of clarification.

## I.    General Background

This is a trade secrets misappropriation case. Generally, Plaintiffs (various entities doing business under the "Allergan" trade name)[3] allege that Defendant misappropriated trade secrets related to Allergan's Botox and Juvéderm cosmetic products to aid in Defendant's development and marketing of its competing products: Daxxify and the RHA Collection. On December 11, 2024, the Court appointed the undersigned as Special Master to aid in resolving discovery disputes that have arisen over the course of this litigation. ECF 292.[4]

## II.    Issues Raised by Revance's ESI Submission

Revance's ESI Submission seeks to (1) add additional custodians to Plaintiffs' ESI search and (2) expand the search terms Allergan is employing to search its own ESI. Revance asks that five custodians be added to Allergan's ESI search: David Moatazedi, Karen Sitney, Michael Davey, Michael Magyar, and Jorge Gonzalez. Revance also asks that the Special Master compel Allergan to run the following search terms against all of the ESI Allergan has collected from custodians thus far (the "General Search Terms"):[5]

---

[3]    This Order refers to Plaintiffs as "Plaintiffs" and "Allergan" interchangeably.

[4]    For a more fulsome description of the claims at issue in this lawsuit, see the "General Background" section of the Order of the Special Master Resolving Plaintiffs' Renewed Motion to Compel Production of Certain Documents (ECF 302).

[5]    Revance also requests, in the event the Special Master orders that Mr. Moatazedi, Dr. Sitney, Mr. Davey, Mr. Magyar, and/or Mr. Gonzalez be added as custodians, that these universal search terms also be run against their ESI.

2

| Term Number | Proposed Term |
|---|---|
| General Term 2 | defend /5 (Botox OR BTX) |
| General Term 4 | (Revance OR RVNC) w/25 Biosimilar |
| General Term 5 | (RHA* OR "RHA Collection") w/50 (market OR compet* OR sale OR Project OR Compar* OR evaluat* OR Commercial*) |
| General Term 6 | (RT001 OR RT-001) w/50 (market OR compet* OR sale* OR Project* OR Compar* OR evaluat* OR Commercial*) |
| General Term 7 | RT002 OR RT-002) w/50 (market OR compet* OR sale* OR Project* OR Compar* OR evaluat* OR Commercial*)[6] |

Beyond those General Search Terms, Revance also requests that the Special Master compel Allergan to run the following additional search terms against the ESI Allergan has collected from Dr. Mitchell Brin (the "Brin-Specific Search Terms"):

| Term Number | Brin-Specific Proposed Search Term |
|---|---|
| Brin-Specific Term 1 | Revance OR RVNC |
| Brin- Specific Term 2 | (Daxxify OR daxibotulinumtoxinA) |

Allergan argues that all of Revance's requests should be denied, but in the event any are granted, Allergan also requests that the Special Master shift the associated costs of document collection, review, and production to Revance.

---

[6] For Allergan custodian Mitchell Brin specifically, Revance proposes that General Terms 5–7 (1) also include the terms "finac*" or "result*" and (2) be limited by a "w/25" connector, instead of the "w/50" connector Revance proposes be used in those terms for all other custodians.

3

## III.     Issues raised by Revance's Sham Litigation Submission

Revance's Sham Litigation Submission requests that the Special Master enter an order compelling Allergan to produce documents responsive to fifteen requests for production (each an "RFP") "concerning Allergan's sham litigation and attempts to compete with Revance." Defendant Revance Therapeutics, Inc.'s Joint Statement of Issues Pursuant to Local Rule 37.01(b) Relating to Sham Litigation and Unfair Competition Discovery ("Revance's Sham Litigation Joint Statement") at 1. Revance claims that Allergan's refusal to produce responsive documents or its agreement to produce only a limited scope of documents runs afoul of Federal Rule of Civil Procedure 26, permitting a party to obtain "discovery regarding 'any nonprivileged matter that is relevant to any party's claim or defense.'" *Id.* at 2 (quoting Fed. R. Civ. P. 26(b)(1)) (emphasis added in original). Revance argues that the contested RFPs are "relevant to Revance's defenses of competition privilege, Allergan's unclean hands, and sham litigation." *Id.* at 15. These correspond with Revance's fifth and sixth affirmative defenses, present in both its original Answer and Amended Answer:

### FIFTH DEFENSE

Allergan's claims are barred, in whole or in part, by the competition privilege because Revance's conduct was, at all relevant times, done in the context of fair competition and in good faith.

### SIXTH DEFENSE

Allergan's equitable claims are barred by the doctrine of unclean hands and/or in part delicto because the claims were brought and maintained in bad faith to chill competition.

Revance's Answer (ECF 87) at 22; Revance's Amended Answer (ECF 151) at 23.

Allergan previously filed a motion to strike the fifth and sixth affirmative defenses (ECF 95), which the Court denied (ECF 147).[7] As for the fifth affirmative defense, the Court held that, "[w]ithout any controlling authority in either direction, the Court will rely on the Sixth Circuit's clear guidance that motions to strike are disfavored and should be granted only sparingly." ECF 147 at 6. And in holding that it would not strike the sixth affirmative defense, the Court stated,

> As can be seen, the question of whether the *Noerr-Pennington* doctrine applies in the first instance, followed by an assessment of the viability of the sham litigation exception, will involve extensive analysis based on facts that are not currently before the Court. While it appears that this analysis may be forthcoming, it is not appropriate (and likely not possible) at this stage. Therefore, the Court finds that Allergan has not established that Revance's Sixth Affirmative Defense should be stricken pursuant to Rule 12(f) because of the *Noerr-Pennington* doctrine.

*Id.* at 10.

For purposes of the instant dispute, the parties' submissions group together similar requests, for a total of five groups of requests:[8]

| RFP | Request |
|---|---|
| 135 | All documents concerning Revance's and/or DAXXIFY's (DaxibotulinumtoxinAlinum) potential future impact on Botox's market share. |
| 136 | All documents concerning competitive intelligence on Revance from January 1, 2014 to present, including all documents analyzing Revance's financial resources. |

---

[7] That motion to strike also sought to strike Revance's fourth affirmative defense. ECF 95. The Court granted the request to strike that fourth affirmative defense, which is not at issue here. ECF 147.

[8] As noted by Allergan in its submission, Revance's submission also included RFP Nos. 168 and 169 in its table of RFPs at issue but then did not include any argument about these requests. *See* Allergan's December 20, 2024 Letter re Sham Litigation at 7 n.1 ("Although you also cite to RFP No. 168 and 169 (which seek the same type of documents), your joint statement does not mention them or include them in your statement of alleged relevance."), Revance's Sham Litigation Joint Submission at 7–8 (listing requests at issue, including RFP Nos. 168 and 169). To the extent RFP Nos. 168 and 169 are still at issue, such requests appear to be appropriately categorized with RFP Nos. 170–176. Nonetheless, in the supplemental briefing requested in Section IV.C, the Special Master also requests that Revance clarify whether RFP Nos. 168 and 169 are still at issue.

| | |
|---|---|
| 140 | All Board of Director minutes, notes, and documents from Board of Director meetings concerning Revance and/or DAXXIFY. |
| 141 | All Board of Director minutes, notes, and documents from Board of Director meetings concerning Revance's proposed Botox Biosimilar. |
| 147 | All documents, including communications, with AbbVie or Plaintiffs' executives concerning Revance from January 1, 2019 to present. |
| 161 | All documents concerning Allergan's then-Chief Legal Officer and Corporate Secretary Bob Bailey's letter to Revance's then-Chief Executive Officer Dan Browne dated April 11, 2019, including all documents related to any investigation or discussions concerning the letter before it was sent. |
| 170 | All non-privileged documents and communications concerning the allegation that *Abbott Products, Inc. v. Teva Pharmaceuticals*, No. 1:11-cv-00384-HB in the United States District Court for the District of Delaware was sham litigation. |
| 171 | All non-privileged documents and communications regarding the government's allegations in *FTC v. AbbVie Inc.*, No. 14-5151 in the United States District Court for the Eastern District of Pennsylvania, including the appeal found at *FTC v. AbbVie Inc.*, 976 F.3d 327, 338 (3d Cir. 2020), that defendants in that action had engaged in sham litigation. |
| 172 | All non-privileged documents and communications concerning any allegation made against Allergan that it has engaged in sham litigation. |
| 173 | All non-privileged documents and communications concerning any allegation made against Allergan by a governmental entity that Allergan has engaged in unfair competition, antitrust violations, or anticompetitive behavior. |
| 174 | All non-privileged documents and communications concerning any allegation made against Allergan in a lawsuit that Allergan has engaged in unfair competition, antitrust violations, or anticompetitive behavior. |
| 175 | All non-privileged documents and communications concerning any settlements between the Federal Trade Commission and Allergan. |
| 176 | All non-privileged documents and communications concerning any settlements of a legal action or proceeding in which Allergan was alleged to have engaged in unfair competition or sham litigation. |

6

| 177 | All documents and communications concerning Allergan's motivation in bringing the Action against Revance. |
|---|---|
| 178 | All documents and communications concerning Allergan's decision to file the Action against Revance. |

## IV. Discussion

The Special Master's rulings with respect to Revance's ESI Submission and Revance's Sham Litigation Submission are discussed in turn below. However, before the Special Master can resolve all of the issues raised by these submissions, the Special Master requires further, targeted briefing from the parties on the potential relevance (or lack thereof) of Allergan's subjective motivations and/or intent in filing this lawsuit. Specifically, the Special Master defers its rulings on adding Jorge Gonzales as a custodian and on RFP Nos. 140, 141, 147, and 170–178 until it receives further briefing from the parties on this issue. In Section IV.C. the Special Master specifically identifies the narrow issue that requires further briefing and establishes a briefing schedule.

### A. Revance's ESI Submission.

As discussed in more detail below, the Special Master grants Revance's request to add Mr. Moatazedi as an ESI custodian; denies Revance's request to add Dr. Sitney, Mr. Davey, and Mr. Magyar as ESI custodians; and defers its ruling on adding Mr. Gonzalez as an ESI custodian pending further briefing. The Special Master grants Revance's request to add General Search Term 2; grants the request to add General Search Term 4, with one modification; and denies Revance's request as to all other General Search Terms (beyond the form of the search terms Allergan has already agreed to run).[9] The Special Master denies Revance's request to add the Brin-Specific

---

[9] Allergan has already agreed to run (and, presumably, has been running) some variation of General Search Terms 5 and 7. *See* Revance's ESI Submission (Revance's Portion) at 3–4.

Search Terms but holds that Allergan shall run the General Search Terms allowed by this Order against Dr. Brin's ESI (in the same way those terms should be run against all Allergan custodian's ESI). The Special Master also denies Allergan's request to shift the costs of discovery.

In resolving Revance's ESI related requests, the Special Master applies the same legal framework it applied to resolve ESI disputes in the Order of the Special Master Resolving Plaintiffs' Renewed Motion to Compel Production of Certain Documents. *See* ECF 302 at 5–7 (discussing the legal framework that district courts and leading legal commentary organizations across the country have developed to resolve ESI discovery disputes). That is, Allergan's proposed methods for searching its own ESI (*i.e.*, search terms) will stand unless Revance can illustrate that those search terms are "manifestly unreasonable or . . . the resulting production is deficient." *Commins v. NES Rentals Holdings, Inc.*, No. 3:16CV-00608-GNS, 2018 WL 3186983, at *3 (W.D. Ky. June 28, 2018) (quoting *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 15 Civ. 0293, 2017 WL 2305398, at *2 (S.D.N.Y May 18, 2017)); *accord, e.g.*, M.D. Tenn. Admin. Order 174-1 at 3, ¶ 6 ("The producing party is best situated to evaluate the methods and protocols appropriate for searching its own ESI. ESI searches shall be done using methods and protocols selected by the producing party, if reasonable and likely to locate relevant ESI."). Similarly, with respect to custodians, the Special Master will order that custodians be added to Allergan's search only if Revance can show "that the proposed additional custodians [possess] some unique relevant information" beyond that available from already agreed-to custodians. *Mortg. Resol. Servicing, LLC,* 2017 WL 2305398, at *3; *accord, e.g.*, *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016).

8

1. **Revance's Requested Additional Custodians**

Each of the five custodians Revance asks to be added to Allergan's ESI review—David Moatazedi, Karen Sitney, Michael Davey, Michael Magyar, and Jorge Gonzalez—will be discussed in turn.

a. **David Moatazedi**

Mr. Moatazedi was "the former Senior VP, Sales and Market, Facial Aesthetics at Allergan." Revance's ESI Submission (Allergan's Portion) at 6. No party contends that Mr. Moatazedi ever worked for Revance, and he left Allergan "in May of 2018," years before Revance brought the Daxxify and RHA Collection products that are at the heart of this case to market.[10] *Id.*

Revance contends that Mr. Moatazedi possess unique, discoverable ESI "related to Allergan's business-side competitive monitoring of Revance's development" because "[t]he limited ESI Allergan produced in the case to date shows he repeatedly communicated with Allergan's management concerning Revance's rise as an Allergan competitor." *Id.* (Revance's Portion) at 1–2. In response, Allergan contends that Mr. Moatazedi does not possess any unique ESI because (1) he left Allergan long before Revance actually launched the products that are at issue in this lawsuit, (2) the "business-side competitive monitoring" information Revance claims to seek is available from other agreed-to custodians (such as Chad Lindermann,[11] Cara Chastain,[12]

---

[10]    Revance brought its Daxxify product (which competes with Allergan's Botox product) to market in September 2022, and Revance brought its RHA Collection product (which competes with Allergan's Juvéderm product) to market sometime in 2020. Compl. (ECF 1) ¶¶ 4, 66.

[11]    Mr. Lindermann "is Allergan's Vice President of Marketing." Revance's ESI Submission (Allergan's Portion) at 6.

[12]    Ms. Chastain "was the Associate Vice President of Marketing for Juvéderm prior to leaving Allergan and the Executive Director of Marketing of Facial Aesthetics before that." *Id.*

9

and Mitchell Brin[13]), and (3) the communications involving Mr. Moatazedi "do not support Revance's position." *Id.* (Allergan's Portion) at 6–7.

The Special Master finds that Revance has shown Mr. Moatazedi likely possesses unique ESI, and this showing is illustrated by the October 2015 email thread attached to Revance's ESI Submission as Exhibit I. ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ █ ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████

Exhibit I to Revance's ESI Submission supports three conclusions that lead the Special Master to hold that Mr. Moatazedi be added as an ESI custodian. First, while it appears to be

---

[13]      Dr. Brin "is Allergan's Senior Vice President and Chief Scientific Officer." *Id.*



undisputed that Mr. Moatazedi left Allergan in May 2018 (years before the launch of Daxxify), it also appears that he was involved in competitive analysis of the product that would become Daxxify during his time at Allergan. Second, Mr. Moatazedi's involvement in this competitive analysis looks to be more than peripheral— ███████████████████████████████████████

████████████████████████████████████████████████

██████████ Third, Mr. Moatazedi appears to possess unique ESI beyond that available from other agreed custodians, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

Allergan's competitive analysis of Revance's technical abilities and progress on its Daxxify product is relevant to Revance's "independent development defense" to Allergan's trade secret misappropriation claims. *See* Revance's Amended Answer (ECF 151) at 24 ("Allergan's claims of trade secret misappropriation fail because Revance developed its products as a result of its own labor and efforts."). Allergan alleges, in essence, that Revance could not have independently developed Daxxify, or at least that it could not have developed Daxxify so quickly, without the benefit of Allergan's misappropriated trade secrets. *See*, *e.g.*, Compl. (ECF 1) ¶¶ 1, 7–8, 10, 126–127. Unvarnished, real-time opinions and analyses about Revance's technical capabilities—especially from Allergan's own personnel—are relevant to refuting (or substantiating) that contention. Because Mr. Moatazedi appears to possess some unique ESI relating to that competitive analysis, the Special Master rules that Allergan must include him as an ESI custodian.

11

### b. Karen Sitney

Dr. Sitney is Allergan's "S[enio]r Director, CMC Regulatory Affairs." Revance's ESI Submission (Allergan's Portion) at 7. Dr. Sitney was the senior director "of the department in which Ms. [Jennifer] Aggabao worked" at Allergan *Id.* Ms. Aggabao is one of the former-Allergan-employees-turned-Revance-employees that Allergan accuses of misappropriating Allergan trade secrets upon her departure from the company. *See* Compl. (ECF 1) ¶¶ 83–101 (detailing Ms. Aggabao's alleged misappropriation of trade secrets). As such, Revance contends that Dr. Sitney possess unique, relevant ESI related to "[t]he circumstances of how Ms. Aggabao left and why." Revance's ESI Submission (Revance's Portion) at 2.

Revance specifically points to Exhibit K to Revance's ESI Submission as supporting its argument to add Dr. Sitney as a custodian. ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████

The exhibits Revance cites in support of its argument for adding Dr. Sitney as a custodian illustrate that Dr. Clarke and Ms. Pao—both of whom are already agreed custodians—are equally, if not better, equipped to provide ESI regarding the circumstances of Ms. Aggabao's departure. ████ ██████████████████████████████████████████████

12

███████████████████████████████████. ██████████████████
████████████████████████████████████████████████████

Because adding a custodian is only proper where that custodian possess unique ESI, and because Revance has not shown that Dr. Sitney can provide any unique ESI beyond that available from Dr. Clarke and Ms. Pao, the Special Master denies the request to add Ms. Sitney as a custodian. *See, e.g.*, *Mortg. Resol. Servicing, LLC,* 2017 WL 2305398, at *3; *Enslin*, 2016 WL 7042206, at *3.

### c.      Michael Davey and Michael Magyar

The parties analyze Mr. Davey and Mr. Magyar together in Revance's ESI Submission, so the Special Master does the same here. Mr. Davey and Mr. Magyar are members of Allergan's "digital forensics" team. Revance's ESI Submission (Revance's Portion) at 2. Revance believes they possess unique ESI because "Allergan identified both individuals as having involvement in the forensic analyses mentioned or relied upon to support the Complaint's allegations." *Id.* But as Allergan points out, Allergan also identified three other individuals as being involved in that forensic analysis—Roger Huff, Stewart Draper, and Darren Few.[15] *Id.* (Allergan's Portion) at 7–8. All three of those individuals are already agreed custodians.

Revance does not explain why it believes Mr. Davey and Mr. Magyar possess unique ESI beyond that available from Mr. Huff, Mr. Draper, or Mr. Few, and therefore, Revance has not

---

[15]     Revance claims that that Allergan identified *only* Michael Davey, Michael Magyar, and Roger Huff as being involved in the digital forensic investigation underlying Allergan's complaint. Revance's ESI Submission (Revance's Portion) at 2. But a review of Exhibit M (which is an excerpt from Allergan's interrogatory responses) shows that is inaccurate—████████████████ ███████████████████████████████████████████████████

13

carried its burden of proving that Mr. Davey or Mr. Magyar should be added as custodians. *See, e.g.*, *Mortg. Resol. Servicing, LLC,* 2017 WL 2305398, at *3; *Enslin*, 2016 WL 7042206, at *3.

### d. Jorge Gonzalez

Mr. Gonzalez is "Senior Counsel, Intellectual Property Litigation" at Allergan "and is responsible for the day-to-day inhouse responsibilities related to this litigation and a separate ongoing patent litigation between Revance and Allergan." Revance's ESI Submission (Allergan's Portion) at 8. Revance contends that Mr. Gonzalez possesses unique ESI related to Revance's "sham litigation defense," and specifically, Allergan's subjective intent in filing this lawsuit against Revance. *Id.* (Revance's Portion) at 2–3. As discussed below in Section IV.C., the Special Master cannot determine whether Mr. Gonzalez should be added as a custodian until it receives further briefing on how exactly Allergan's subjective intent in filing this lawsuit is relevant to a claim or defense.

### 2. Revance's Requested Additional Search Terms

As indicated above, Revance requests that Allergan be compelled to run five additional General Search Terms against all of its custodians' ESI and, beyond those, requests that two Brin-Specific Search Terms be run against custodian Mitchell Brin's ESI.

Before discussing each individual search term, the Special Master addresses Allergan's universal objection that Revance's proposed search terms are unlimited as to time. *See* Revance's ESI Submission (Allergan's Portion) at 10 ("[F]or all of the terms Revance proposes, it fails to provide any timing limitation . . . ."). When Revance first proposed its General Search Terms in a March 25, 2024 letter to Allergan, it requested that each General Search Term be run from "January 1, 2018 to present." *See id.*, Ex. B at 3. Allergan agreed to this same date range for many of the other agreed-upon search terms. *Id.*, Ex. D, Appendix A. The Special Master will hold the parties

14

to that otherwise agreed date range, and any General Search Terms approved by this order shall be run from January 1, 2018 to present. *See, e.g.*, *Underwood v. O'Reilly Auto Enters., LLC*, No. 2:21-cv-01766-GMN-NJK, 2022 WL 4359096, at *2 (D. Nev. Sept. 20, 2022) ("Parties will be held to the agreements their counsel reached during conferral discussions.") (citing *ProDox, LLC v. Prof. Document Servs.*, 341 F.R.D. 679, 685–86 (D. Nev. 2022)).

### a. Revance's General Search Terms 5 and 7

As an initial matter, Revance does not explain why it believes its formulations of General Search Terms 5 and 7 are superior to the versions of those search terms that Allergan has already agreed to run.[16] Because it is Revance's burden (as the requesting party) to show that the terms selected by Allergan (the producing party) are unreasonable or deficient, and because Revance does not make any specific argument against Allergan's versions of General Search Terms 5 and 7 or in favor of Revance's versions, Revance has not carried its burden to compel Allergan to run those terms. *See, e.g.*, *Commins*, 2018 WL 3186983, at *3; M.D. Tenn. Admin. Order 174-1 at 3, ¶ 6.

### b. Revance's General Search Term 2

As to General Search Term 2, Revance requests the very limited term "defend /5 (Botox OR BTX)." Revance's ESI Submission (Revance's Portion) at 3. Given the use of the word "defend," the "tightness" of the "/5" connector, and the fact that Daxxify appears to be the only seriously competitive product that Botox would be "defending" against, General Search Term 2 seems narrowly tailored to capturing discussions of defensive measures Allergan might have

---

[16] Allergan has agreed to run General Search Term 5 in the following form: "(RHA* OR "RHA Collection") w/50 (market OR compet* OR sale)." Revance's ESI Submission (Revance's Portion) at 3. Allergan has agreed to run General Search Term 7 in the following form: "(RT002 OR RT-002) w/50 (market OR compet* OR sale*)." *Id.* at 4.

15

employed in response to the development of Daxxify. Such communications could be relevant to, among other things, Allergan's perception of Daxxify and Revance as a competitive threat (*i.e.*, damages), or Allergan's real-time perceptions of Daxxify's viability during its development stages (*i.e.*, the "independent development defense").

Accordingly, the Special Master holds that Allergan shall add Revance's General Search Term 2 to its ESI search.

### c.    Revance's General Search Term 4

Revance's General Search Term 4 is targeted to capture Allergan discussions relating to Revance's development of a "Botox biosimilar." As the Special Master has previously explained, "a significant portion of Plaintiffs' trade secret misappropriation claims relate to Defendant's development of a 'Botox biosimilar.'" ECF 302 at 11 (collecting Complaint allegations regarding the Botox biosimilar). Indeed, based on the centrality of the Botox biosimilar to Allergan's claims, the Special Master has already granted *Allergan's* request to compel Revance to run a biosimilar search term against Revance's ESI. *Id.* "What is good for the goose is good for the gander," and the same rationale that supported running a biosimilar search term against Revance's ESI supports running a biosimilar search term against Allergan's ESI. *See Branson v. All. Coal, LLC*, No. 4:19-CV-00155-JHM-HBB, 2022 WL 2717625, at *9 (W.D. Ky. July 13, 2022) ("[I]t is inequitable for one party to be limited in size when seeking discovery while the other party is allowed full reign . . . .").

Acknowledging that Allergan too has sought and obtained a biosimilar search term, Allergan contends that its biosimilar search term is more targeted than the one Revance seeks. *See* Revance's ESI Submission (Allergan's Portion) at 10 ("Revance proposes an incredible broad term . . . . In stark contrast, the term Allergan proposed . . . includes multiple connectors targeted at

16

collecting relevant information."). But a review of Allergan's biosimilar search term[17] shows that almost all of the connectors Allergan employs are "OR" connectors, meaning that, in many respects, Allergan's biosimilar search term is *broader* than Revance's.[18] Allergan's biosimilar search term is only narrower than Revance's in its use of the "AND ('Mylan' or 'Viatris')" qualifier, which ensures that only communications using the name "Mylan" or "Viatris" (the former and current trade name of Revance's commercial partner in developing the Botox biosimilar)[19] are captured. As was the case when the Special Master ruled on Allergan's requested biosimilar search term, the Special Master believes "AND ('Mylan' or 'Viatris')" is an appropriate limiter to ensure that only communications referencing the Botox biosimilar project between Revance and Mylan/Viatris are captured in the search. *See* ECF 302 at 11 (justifying the inclusion of the "AND ('Mylan' or 'Viatris')" qualifier).

Accordingly, Allergan shall run General Search Term 4 against its custodial ESI as modified below:

((Revance OR RVNC) w/25 Biosimilar) AND ("Mylan" OR "Viatris")[20]

---

[17]     Allergan's biosimilar search term, as modified by the Special Master, is: ("Daxxify" OR Dax* OR "DaxibotulinumtoxinA" OR RTT* OR tox* OR "BoNT" OR clost* OR botul* OR "Botox" OR "Botox Cosmetic" OR BTX* OR "RTT-900" OR "RTT900" OR "MR-103A-01") w/25 ("PROJ-000005" OR "UN1086AD" OR Biosim* OR "BPCIA") AND ("Mylan" OR "Viatris"). *See* ECF 302 at 12.

[18]     Allergan also contends that General Search Term 4 is unnecessary because Allergan has already agreed to run the term "FDA OR 'Food and Drug Administration' w/50 Biosimilar" against ESI from Dr. Clarke and Ms. Pao. Revance's ESI Submission (Allergan's Portion) at 9–10. But Allergan does not explain why tying "biosimilar" to "FDA" or conjugations thereof is appropriate (especially when there is no "FDA" limitation in the biosimilar search term that *Allergan* previously sought and received), and it does not explain why the biosimilar search term should be limited to only Dr. Clarke and Ms. Pao.

[19]     *See* Compl. (ECF 1) ¶ 54.

[20]     Allergan also argues that General Search Term 4 (along with other terms proposed by Revance) does not make sense as applied to certain custodians whose jobs do not involve technical

*(footnote continues on next page)*

17

#### d.     Revance's General Search Term 6

Revance targets General Search Term 6 to capture discussions regarding its "RT001" product, which was a botulinum neurotoxin topical product that Revance abandoned in 2016 and never brought to market. *See* Compl. (ECF 1) ¶¶ 3, 48. Allergan does not allege that Revance misappropriated Allergan trade secrets in its development of the long-discontinued RT001 topical product. *See generally id.* Revance does not explain how communications about a product that has been defunct for almost 10 years, was never brought to market, and is not a subject of this lawsuit are relevant to any claims or defenses. Because it is Revance's burden to justify the imposition of additional search terms, and because Revance makes no argument for the relevance of RT001-related communications, Revance's request to add General Search Term 6 is denied.

#### e.     The Brin-Specific Search Terms

Revance's request to run General Search Terms 5, 6, and 7 on Dr. Brin's ESI is denied for the same reasons stated above,[21] while Revance's request to run General Search Terms 2 and 4 (as modified by the Special Master) on Dr. Brin's ESI is granted for the reasons stated above. That leaves the two unique Brin-Specific Search Terms:

1. Revance OR RVNC

2. Daxxify OR DaxibotulinumtoxinA

---

product development and whose ESI, therefore, would not contain references to Revance's biosimilar product. *See* Revance's ESI Submission (Allergan's Portion) at 9. That seems like a self-correcting problem. If certain custodians never discussed Revance's biosimilar development, then General Search Term 4 should not "hit" on any of their documents, and running General Search Term 4 against their ESI will impose no burden.

[21]     That said, nothing in this Order affects Allergan's obligation to run the versions of General Search Terms 5 and 7 that it has already agreed to run against Dr. Brin's (or anyone else's) ESI. *See* note 15, *supra*.

18

Revance's argument for including these totally unqualified terms is that "any email Dr. Brin sends that reference or alludes to Revance is responsive to multiple requests." Revance's ESI Submission (Revance's Portion) at 5; *accord id.* ("Given Dr. Brin's importance and the issues involved, Allergan must review all Dr. Brin custodial data mentioning Revance."). Allergan contends that these unqualified terms are overbroad and unduly burdensome, and a meet-and-confer letter contained in Exhibit E to Revance's ESI Submission shows that these two terms alone result in roughly 358,700 "hits" on Dr. Brin's custodial ESI. *See* Revance's ESI Submission (Allergan Portion) at 10; *id.*, Ex. E at 4.[22] Allergan further contends that it is on the cusp of making its first production of Dr. Brin's ESI, and "Revance cannot contend Allergan's current ESI terms for Dr. Brin are inadequate without even first reviewing the resulting production." *Id.* (Allergan's Portion) at 10.

While Revance may be correct that every single mention of the company within Dr. Brin's ESI is *responsive*, that does not mean that all such references are *relevant*. *Relevance* is the burden Revance must carry to be entitled to discovery, and Revance has not shown that every Dr. Brin mention of Revance would be relevant—"[the parties'] competition . . . is not tortious by itself, and documents that would merely go to show the fact of that competition are therefore irrelevant." ECF 302 at 23; *see also St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-CV-00988, 2022 WL 4095387, at *3 (M.D. Tenn. Sept. 7, 2022) ("The party moving to compel discovery bears the initial burden of proving the relevance of the information sought."), *aff'd*, No. 3:18-CV-00988, 2023 WL 3659734 (M.D. Tenn. May 25, 2023). Dr. Brin's communications

---

[22] The "hit" counts provided in Exhibit E for Brin-Specific Search Term 2 were for a previous version of the term that also included the phrase "OR DAX*." Revance subsequently agreed to eliminate the phrase "OR DAX*" from the term, but it is unclear how much that elimination limited the results.

regarding Revance or its Daxxify product are only relevant to the extent they bear on Allergan's trade secret misappropriation allegations, Allergan's claimed damages, Revance's purported independent development of Daxxify, or some other claim or defense. The Special Master agrees with Allergan that simply searching for the name of Revance's company or the Daxxify product— without qualifying those terms in a way intended to target the claims or defenses—would be overbroad and likely to capture swaths of irrelevant information.

Further, even if the Brin-Specific Search Terms could surmount the relevance hurdle, the Special Master would hold that Allergan has carried its burden of showing that these terms would impose an undue burden given that (1) Allergan claims to have already collected and processed "tens of thousands of documents" from Dr. Brin's ESI and (2) the Brin-Specific Search Terms could require review of up to an additional 350,000 documents. *See* Revance's ESI Submission (Allergan's Portion) at 10; *id.*, Ex. E at 4.

Accordingly, the Special Master denies Revance's request to add the Brin-Specific Search Terms.

### 3. Allergan's Request for Cost Shifting

In passing, Allergan "submits that costs associated with the collection, review, and production (or logging on a privilege log) of any new ESI terms or custodians should shift to Revance." Revance's ESI Submission (Allergan's Portion) at 6. "[T]he presumption is that the responding party" (here, Allergan) "must bear the expense of complying with discovery requests." *EEOC v. Gypsum Express, L.T.D.*, 345 F.R.D. 442, 448 (E.D. Ky. 2024) (cleaned up) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)); *accord* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for*

*Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 187 (2018)[23] (Principle 13) ("The costs of preserving and producing relevant and proportionate electronically stored information ordinarily should be borne by the responding party."). Although Federal Rule of Civil Procedure 26(c)(1)(B) authorizes a court to enter a protective order that shifts the costs of discovery from the producing party to the requesting party, the producing party must show "good cause" for the issuance of such a protective order, and the advisory committee cautions that "cost-shifting should [not] become a common practice." *See* Fed. R. Civ. P. 26(c)(1)(B), advisory committee's notes to 2015 amendment.

To determine whether a litigant has shown good cause for discovery cost shifting, courts in the Sixth Circuit and the Sedona Conference have developed a host of factors to consider. *See Gypsum Express*, 345 F.R.D. at 448–49 (discussing up to thirteen different factors used by Sixth Circuit courts to determine the propriety of cost shifting); The Sedona Conference, *supra*, at 187–89 (Comment 13.a) (enumerating six different cost-shifting factors). Allergan does not attempt to apply any of these factors or make any specific argument for exempting Allergan from the general rule that the producing party bears the cost of discovery.

Accordingly, Allergan's request for discovery cost shifting is denied.

### B.      Revance's Sham Litigation Submission

Turning now to Revance's Sham Litigation Submission, as discussed in more detail below, the parties' dispute as to RFP Nos. 135 and 136 is now moot, and in response to RFP No. 161, the Special Master orders that Allergan prepare a privilege log by April 14, 2025. As explained in

---

[23]      "Courts in the Sixth Circuit have relied on the Sedona Principles to inform their analysis of ESI discovery requests." *M.A. v. Wyndham Hotels & Resorts, Inc.*, Nos. 2:19-cv-849, 2:19-cv-755, 2020 WL 1983069, at *4 (S.D. Ohio Apr. 27, 2020).

Section IV.C., *infra*, the Special Master will defer ruling on RFP Nos. 140–141, 147 and 170–178 pending further briefing.

### 1. RFP Nos. 135 and 136

RFP Nos. 135 and 136 seek documents regarding Allergan's competitive intelligence on Revance and documents regarding Revance's and/or Daxxify's potential future impact on Botox's market share. Following the parties' meet and confer, Allergan agreed to produce "business planning documents" for Botox from 2015 to present. Revance's Sham Litigation Joint Statement at 3–4. Revance expressed concern as to whether "these hand-picked 'business development documents' constitute the full scope of [Allergan's] competitive intelligence into Revance." *Id.* at 15.

In Allergan's response letter, Allergan clarified that "[its] reference to 'business planning documents' is not meant to be limiting in any way, but rather to serve as a shorthand for the documents Revance has requested." Allergan's December 20, 2024 Letter at 6. Allergan continued that "[it is] not withholding any relevant, responsive, and non-privileged documents in response to these requests." *Id.*

It does not appear to the Special Master that there is a remaining dispute as to RFP Nos. 135 and 136. To the extent that Allergan has yet to produce documents responsive to RFP Nos. 135 and 136, it shall promptly do so.

Accordingly, Revance's request to compel Allergan to produce documents responsive to RFP Nos. 135 and 136 is denied as moot.

### 2. RFP No. 161

RFP No. 161 seeks all documents concerning a letter sent by Allergan's then-Chief Legal Officer and Corporate Secretary Bob Bailey to Revance's then-Chief Executive Office Dan

22

Browne dated April 11, 2019. Allergan has asserted privilege objections over any responsive documents, but Revance notes in its submission that Allergan has not provided a privilege log to substantiate such privilege claims. Revance's Sham Litigation Joint Statement at 17. Moreover, Revance asserts that "it is not credible for Allergan to claim every single document related to the letter is privileged just because the letter came from one of Allergan's attorneys," and "it is implausible that every single communication leading up to sending the letter (or in assessing Revance's response) is subject to the same privilege claim." *Id.* Nonetheless, Revance requests that the Special Master order Allergan to "produce an appropriately-detailed privilege log" if Allergan continues to assert privilege over any responsive documents. *Id.*

In response, Allergan reaffirmed its position that "[a]side from the letter and any response, which Revance already has, the documents Revance seeks through this request are privileged." Allergan's December 20, 2024 Letter at 7. Allergan then agreed to provide a privilege log for documents that would be responsive to RFP No. 161. *Id.*

Accordingly, the Special Master orders Allergan to identify the documents responsive to RFP 161 that it is withholding due to privilege in the privilege log it agreed to produce by April 14, 2025, and denies Revance's motion to compel further production at this stage, without prejudice to reassert after Allergan produces its privilege log.

### 3.    RFP Nos. 140–141, 147, and 170–178

At their core, RFP Nos. 140–141, 147, and 170–178 all seek information regarding Allergan's subjective intent for filing this lawsuit. In fact, RFP Nos. 177 and 178 explicitly request documents and communications regarding Allergan's motivation and decision to file the instant action, respectively. As discussed immediately below, the Special Master cannot determine whether such requests are proper under Federal Rule of Civil Procedure 26 until it receives further

briefing on how exactly Allergan's subjective intent in filing this lawsuit is relevant to a claim or defense.

### C. The Special Master's Request for Supplemental Briefing Regarding the Relevance of Allergan's Subjective Intent in Filing this Lawsuit.

A common—and necessary—analytical thread underlies Revance's request to add Mr. Gonzalez as a custodian and to compel responses to RFP Nos. 140–141, 147, and 170–178: for all these issues, Revance contends that the discovery is necessary to understand Allergan's subjective intent in filing this lawsuit. That begs the question: why is Allergan's subjective intent— anticompetitive, innocent, or otherwise—relevant to a claim or defense in this case? Revance contends that Allergan's subjective intent is relevant to proving its "sham litigation defense" to Allergan's claims of trade secret misappropriation. Revance's ESI Submission (Revance's Portion) at 2–3. Neither party, however, fully briefed and argued this issue, which the Special Master prefers before issuing a ruling. The Special Master therefore poses the following question for additional briefing:

> Is Allergan's subjective intent in filing this lawsuit relevant to Revance's defense against Allergan's trade secret misappropriation claims and in what scenario could the Court or the jury consider Allergan's subjective intent in deciding whether Revance is liable for Allergan's claims? Analysis of cases evaluating the relevance of the plaintiff's subjective intent in this context—where "sham litigation" is asserted purely as a defense and not as a means to impose liability—would be helpful.

## V. Conclusion

In accordance with the foregoing, the Special Master hereby **ORDERS** that:

1. Defendant's February 19, 2025, joint submission to the Special Master regarding electronically stored information custodians and search terms (related briefing and exhibits filed contemporaneously with this Order as separate docket entries) is **GRANTED in part**, **DENIED in part**, and **DEFERRED in part** as follows:

    a. Plaintiffs **SHALL** collect and review the electronically stored information of David Moatazedi as an ESI custodian in this case. The parties **SHALL**

work together to generate appropriate search parameters for David Moatazedi pursuant to their Proposed Joint Discovery Plan (ECF 90; ECF 223).

b.      Plaintiffs **SHALL** run the following General Search Terms against all of their custodial ESI from **January 1, 2018 to present**:

| General Term 2 | defend /5 (Botox OR BTX) |
|---|---|
| General Term 4 | ((Revance OR RVNC) w/25 Biosimilar) AND ("Mylan" OR "Viatris") |

c.      Defendant's request to add Jorge Gonzalez as an ESI custodian is hereby **DEFERRED** pending the Special Master's receipt of the briefing requested in number 3 below.

d.      All other relief requested in Defendant's February 19, 2025, joint submission to the Special Master regarding electronically stored information custodians and search terms is **DENIED**.

2.      Defendant's "issue number 2" in the parties' January 13, 2025, joint submission to the Special Master regarding discovery requests related to its sham litigation defense (related briefing and exhibits filed contemporaneously with this Order as separate docket entries) is **GRANTED in part**, **DENIED in part**, and **DEFERRED in part** as follows:

a.      Defendant's requests with respect to Defendant's RFP Nos. 135 and 136 are **DENIED as moot.**

b.      Defendant's request as to RFP No. 161 is **GRANTED** to the extent that Plaintiffs **SHALL** produce a privilege log identifying all documents responsive to Defendant's RFP No. 161 that are being withheld based on an assertion of privilege by **April 14, 2025,** but **DENIED** with respect to Allergan producing additional responsive documents at this time, without prejudice to reassert this request after Allergan produces its privilege log.

c.      Defendant's requests with respect to Defendant's RFP Nos. 140–141, 147 and 170–178 are **DEFERRED** pending the Special Master's receipt of the briefing requested in number 3 below.

d.      All other relief requested in Defendant's "issue number 2" in the parties' January 13, 2025, joint submission to the Special Master regarding discovery requests related to its sham litigation defense is **DENIED**.

3.      The parties **SHALL** submit further briefing to the Special Master on the question posed in Section IV.C. under the following conditions:

25

    a.       Defendant **SHALL** submit an opening brief answering the Special Master's question by **April 4, 2025**. Defendant's brief shall also clarify whether RFP Nos. 168 and 169 are still at issue. *See* note 8, *supra*.

    b.       Plaintiffs may submit a brief in response to Defendant's brief on the question by **April 14, 2025.**

    c.       Defendant may file a reply brief by **April 18, 2025**.

4.    The Special Master has filed contemporaneously with this Order all the briefing and exhibits it reviewed in conjunction with this Order. The Special Master filed several of those items under seal because the parties designated them "confidential." The Special Master has also redacted certain portions of the publicly-filed version of this Order to accommodate the parties' confidentiality designations, and it has filed an unredacted version of this Order under seal. Within fourteen (14) days of the entry of this Order, any party who desires for any material filed under seal in conjunction with this Order to remain under seal **SHALL** file a motion to seal with the Court pursuant to Local Rule 5.03.

5.    Pursuant to paragraph three of the Court's Order Modifying Case Management Order and Granting Request for the Appointment of a Special Master (ECF 275), the parties have twenty-one (21) days from the date of this Order to file objections or a motion to adopt or modify any of the Special Master's rulings in this Order.

**IT IS SO ORDERED.**

Signed March 25, 2025.

*E. Todd Presnell*

_____

Special Master Todd Presnell