UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALLERGAN, INC., ALLERGAN ) <br> PHARMACEUTICALS IRELAND ) <br> UNLIMITED COMPANY, ALLERGAN ) <br> USA, INC., AND ALLERGAN SALES, LLC ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> REVANCE THERAPEUTICS, INC. ) <br>     Defendant. ) | Civil Action No. 3:23-cv-00431 <br> Judge Richardson/Frensley |

### ORDER OF THE SPECIAL MASTER RESOLVING JOINT STATEMENT ON PRIVILEGE OBJECTIONS DURING THE DEPOSITIONS OF DEREK CHAN AND ROGER HUFF

This case comes before the Special Master on the parties' January 13, 2025, Joint Submission to the Special Master. The first of several discovery disputes Revance Therapeutics, Inc.[1] raises in the Joint Submission relates to its challenge to Allergan's[2] attorney-client privilege objections during the depositions of Derek Chan and Roger Huff. The parties' briefing on this issue is located at Exhibit 1 (Revance) and Exhibit 2 (Allergan) of the Joint Submission.[3] Revance requests an order both overruling Allergan's objections to questions it asked during the depositions and permitting Revance to further question Mr. Chan and Mr. Huff "regarding" or "about" certain

---

[1] This Order refers to Defendant as "Revance."

[2] This Order refers to Plaintiffs as "Allergan."

[3] Exhibits 1 and 2 of the Joint Submission, as well as Exhibits A and B to Exhibit 1, portions of the transcripts of the depositions of Roger Huff and Derek Chan, respectively, are attached to this Order as separate docket entries. These exhibits are filed under seal because the parties have designated these depositions as confidential, and their briefing extensively cites these depositions.

1

topics.[4] Ex. 1 at 3–4. Upon consideration of the parties' briefing and the relevant exhibits the parties submitted, the Special Master grants in part and denies in part Revance's request for relief.

I.   **Issues Raised by Exhibits 1 and 2**

The parties and the Special Master are familiar with the background of this action generally. *See, e.g.*, ECF No. 302 at PageID ## 5252–54. As relevant to this discovery dispute, Exhibits 1 and 2 concern Allergan's privilege objections during the depositions of Derek Chan and Roger Huff that Revance asserts were improper. The Special Master largely takes the following background information from Exhibit 1, as Allergan does not dispute any of it. *See* Ex. 2 at 8–9. ████████████████████████████████████████████ ████████████████████████████████████████████ Allergan asserts that Revance misappropriated Allergan's trade secrets via, among other things, Mr. Chan electronically accessing Allergan's trade secrets while working for Revance to help Revance develop its Daxxify product. ECF No. 82-11 at PageID ## 1236–37; ECF No. 129-1 at PageID # 2081. ████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[4]   Revance also requests an order that Allergan log all documents supporting its privilege objections. Ex. 1 at 1. Allergan produced that privilege log on March 21, 2025, so this request is now moot.

2



## II. Discussion

Federal common law governs all privilege assertions in federal-question cases, even where there are supplemental state law claims. *Hancock v. Dodson*, 958 F.2d 1367, 1372–73 (6th Cir. 1992); *Doe v. Hamilton Cnty. Bd. of Educ.*, No. 1:16-CV-373, 2018 WL 542971, at *2 (E.D. Tenn. Jan. 24, 2018). Here, Allergan sues under the federal Defend Trade Secrets Act ("DTSA") and the Tennessee Uniform Trade Secrets Act ("TUTSA"). Revance asserts that the TUTSA claim is a supplemental state law claim and that federal common law therefore governs all claims of privilege in this action. Ex. 1 at 11–12. Allergan does not dispute this assertion. *See generally*

3

Ex. 2 at 8–9.[5] The Special Master also takes notice that the Complaint alleges that the Court has federal-question jurisdiction over this action via the DTSA and supplemental jurisdiction over the TUTSA claim, ECF No. 1 ¶¶ 17–19, and the Answer does not dispute the allegations relating to subject matter jurisdiction, ECF No. 87 ¶¶ 17–19; ECF No. 151 ¶¶ 17–19. The Special Master therefore applies federal common law to all privilege claims in this action.

A. **Scope of the Corporate Attorney-Client Privilege**

In the corporate setting, the federal attorney-client privilege protects from compelled disclosure confidential communications between a legal entity's lawyers and its employees made for legal-advice purposes that concern matters falling within the employees' scope of employment. *See generally Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359–60 (3d Cir. 2007); *Ross v. City of Memphis*, 423 F.3d 596, 600–02 (6th Cir. 2005); *Ciccio v. SmileDirectClub, LLC*, No. 3:19-cv-0845, 2022 WL 2182301, at *2 (M.D. Tenn. June 16, 2022); *United States v. Cole*, No. 1:20-cr-424, 2021 WL 5277148, at *4 (N.D. Ohio Nov. 12, 2021) (quoting Restatement (Third) of the Law Governing Lawyers § 68). The party seeking privilege protection bears the burden of proving its application. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). The Sixth Circuit, borrowing Dean Wigmore's classic privilege formulation, has ruled that, where (1) legal advice was sought, (2) from a professional legal adviser in his capacity as such, (3) the communications related to that purpose, (4) were made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or the legal adviser, (8) unless the privilege has been waived. *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964) (citing 8 John Henry Wigmore, *Evidence in*

---

5 ▓▓▓▓▓▓▓ But Allergan appears to abandon that position in Exhibit 2 by not disputing Revance's argument that federal common law governs this dispute.

*Trials at Common Law* § 2292 (McNaughten Rev. 1961)); *see also Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998); *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992). This privilege formulation requires the privilege proponent to prove an attorney-client relationship between the corporate entity and the lawyer with whom the entity's employee communicates and a confidential communication between the employee and lawyer generated for the purpose of the lawyer providing the client entity with legal advice. *See Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1227 (9th Cir. 2025); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (citing *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir. 1989)).

The attorney-client privilege is "narrowly construed" because it impedes the search for the truth. *Ross*, 423 F.3d at 600. It therefore applies "only where necessary to achieve its purpose" of encouraging "full and frank communications between attorneys and their clients" and "protects only those communications necessary to obtain legal advice." *Id.* (emphasis removed). The privilege "does not envelope everything arising from the existence of an attorney-client relationship" and "does not protect against disclosure of the facts underlying the communication." *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985).

When a company's lawyer communicates with an employee, the company may claim privilege over such communications only when the communications concern matters within the scope of the employee's corporate duties and the employee is sufficiently aware that the communications are made so that the corporation can obtain legal advice. *See Upjohn*, 449 U.S. at 394; *In re Perrigo Co.*, 128 F.3d at 437 (quoting *Admiral Ins. Co.*, 881 F.2d at 1492). For such communications to concern matters within the scope of the employee's corporate duties, they must concern activities that occurred, or information obtained, during the employee's employment with the company claiming the privilege, not another company. *See Export-Import Bank of the U.S. v.*

5

*Asia Pulp & Paper Co.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005) ("Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment."); *U.S. ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 340 F. Supp. 2d 554, 558 (E.D. Pa. 2004) (stating that, "if the communication sought to be elicited relates to Ms. Elliott's conduct or knowledge *during* her employment with Medco Defendants . . . the communication is privileged"); *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999) (holding that, while some communications between a company's lawyer and former employee were privileged, any that went "beyond [the employee's] other activities within the course of her employment with the" company were not).

Whether a corporate employee's conduct or action following consultation with company counsel is privileged raises difficult privilege issues. *See Hudock v. LG Elecs. U.S.A., Inc.*, No. 0:16-cv-1220-JRT-KMM, 2019 WL 5692290, at *3 (D. Minn. Nov. 4, 2019) ("It is somewhat difficult to draw the line between privileged and non-privileged communications in the context of a client's implementation of her lawyer's advice."). First, the privilege does not protect from disclosure the legal consultation's *general* subject matter, *see Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 100 (2013), but can in some circumstances shield revelation of its *specific* content, *see Am. Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987). Second, the privilege safeguards the lawyer's legal advice supplied in the lawyer–client consultation but does not protect from disclosure one's action or inaction after legal consultation. *Quarrie v. Wells*, No. 17-350 MV/GBW, 2020 WL 2112122, at *9 (D.N.M. May 4, 2020) ("Although the August 22, 2017 memorandum is itself protected by attorney-client privilege, that privilege does not extend to the actions taken by Defendant NMT pursuant to counsel's advice; it protects only the advice itself."); *Steward v. Smith*, No. SA-10-CA-1025-OG, 2018 WL 11361754, at *2 n.6 (W.D. Tex.

6

July 31, 2018) (explaining that privilege may cover communications between attorney and client regarding policy changes but not the "revision and implementation" of that policy); *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d at 805 ("Certainly, when a corporate executive makes a decision after consulting with an attorney, his decision is not privileged whether it is based on that advice or even mirrors it."); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988) (rejecting the "novel proposition" that a company's decision "to proceed with or forego a certain course of action is itself privileged where that decision is in whole or in part based upon legal advice on the apparent theory that the decision itself necessarily reflects the advice"). This privilege distinction surfaces because a client's post-consultation conduct may or may not align with the legal advice received. *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d at 805 n.27 ("Since the actions taken by the client do not have to be consistent with the advice given, an extension of the privilege to client decisions would be unwarranted.") (quoting Paul R. Rice, 1 *Attorney-Client Privilege in the United States*, § 5:15, p. 113 (Thomson West 2d ed.1999)). Yet, the privilege shelters the reason why one acted or refused to act if the reason reveals the lawyer's legal advice. *See SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 516–17 (D. Conn. 1976) ("To allow a litigant to probe beyond the assertion of privilege to the substance of the legal advice because the client takes that advice to heart and acts upon it would effectively circumvent the protection of the privilege."); *see also Broadbent v. Williams*, No. 4:24-cv-00091-DN, 2025 WL 385101, at *16 (D. Utah Feb. 4, 2025); *Oasis Int'l Waters*, 110 Fed. Cl. at 101 (2013); *Hudock*, 2019 WL 5692290, at *3–4; *Schudmak v. Bossetta*, No. 06-0893-CJB-SS, 2007 WL 9778168, at *3 (E.D. La. Mar. 1, 2007).

### B. Asserting the Privilege in Depositions

Having discussed the privilege's parameters and the necessary showing by Allergan, as the

7

privilege proponent, to prove its privilege claims, the issue becomes the sufficiency of the record before the Special Master in assessing Allergan's privilege assertions in the depositions of Mr. Chan and Mr. Huff. Allergan asserts that it laid a sufficient foundation to support its privilege assertions based on the few questions it allowed Mr. Chan and Mr. Huff to answer in their depositions. Ex. 2 at 8–9. The Special Master respectfully disagrees. Allergan has prevented Revance and the Special Master from evaluating Allergan's privilege assertions by instructing Mr. Chan and Mr. Huff not to answer basic foundational questions eliciting information necessary to evaluate Allergan's privilege objections.

The question then becomes how to flesh out the record to allow Revance and the Special Master to evaluate Allergan's privilege assertions. Revance requests that the Special Master both (1) overrule specific objections Allergan made in response to specific questions Revance asked during the depositions of Mr. Chan and Mr. Huff and (2) preemptively authorize Revance to ask unspecified questions "regarding" ten general topics relevant to Mr. Chan and "about" eleven general topics relevant to Mr. Huff. Ex. 1 at 3–4.

The normal approach taken by federal courts when a party asserts privilege before or during a deposition is to order that the deposition proceed so the deposing party can ask foundational questions to develop the facts that either prove or disprove any privilege claims while allowing the party claiming privilege to assert its privileges and objections in the deposition. *See In re Alexander Grant & Co. Litig.*, 110 F.R.D. 545, 547 (S.D. Fla. 1986) (stating that objecting counsel "must permit a proper foundation to be established before asserting this privilege"); *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07cv1200-DMS (NLS), 2009 WL 10674472, at *2 (S.D. Cal. Apr. 3, 2009) (ruling that the attorney-client privilege "does not extend to foundational questions that do not require the disclosure of any legal advice sought or provided"); *Methode Elecs., Inc. v.*

8

*Finisar Corp.*, 205 F.R.D. 552, 556 (N.D. Cal. 2001) (rejecting privilege objection where the questions "were foundational in nature [and] did not require the disclosure of any legal advice sought or provided"); *Kaiser v. Mut. Life Ins. Co. of New York*, 161 F.R.D. 378, 380 (S.D. Ind. 1994) (stating that "deponents are expected instead to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection"); *NLRB v. Modern Drop Forge Co.*, 108 F.3d 1379, 1997 WL 120572, at *3 (7th Cir. Mar. 14, 1997) (unpublished table decision); *Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 160 F. Supp. 3d 1069, 1071–72 (N.D. Ill. 2016); *Thomas v. Cate*, 1:05-cv-01198-LJO-JMD-HC, 2010 WL 1343789, at *4 (E.D. Cal. Apr. 5, 2010); *MacKenzie-Childs LLC v. MacKenzie-Childs*, 262 F.R.D. 241, 251 (W.D.N.Y. 2009); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 439 (D. Kan. 2009); *Ceslik v. Miller Ford, Inc.*, 3:04CV2045 (AWT), 2007 WL 1794097, at *2 (D. Conn. June 19, 2007). Such foundational questions include those relevant to the existence, extent, and waiver of the privilege, including questions about the date of putatively privileged communications, who made the putatively privileged communications, the identity of persons to whom the contents of the statement have been disclosed, and the general subject matter of the communications. *See Mirlis v. Greer*, 249 F. Supp. 3d. 611, 616 (D. Conn. 2017); *Sprint Corp.*, 258 F.R.D. at 439 (ruling that, despite a privilege objection, "the witness is nevertheless required to answer questions relevant to the existence, extent, or waiver of the privilege/immunity, such as the date of a communication, who made it, to whom it has been disclosed, and its general subject matter"); *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 421 n.27 (D. Md. 2005). The deposing party may then ask about the substance of the communications if it concludes in good faith that the privilege is inapplicable, and the party asserting privilege may object if it has a sufficient, good-

9

faith basis for the privilege. *See Modern Drop Forge Co.*, 1997 WL 120572, at *3; *Sprint Corp.*, 258 F.R.D. at 439; *Neuberger Berman*, 230 F.R.D. at 421–22.

If the parties reach an impasse about any privilege assertions, the deposing party may move to compel the witness's response to specific questions the witness refused to answer. *See MacKenzie-Childs LLC*, 262 F.R.D. at 251–52; *Ceslik*, 2007 WL 1794097, at *2; *Pritchard v. Cnty. of Erie*, No. 04CV534C, 2006 WL 2927852, at *3 (W.D.N.Y. Oct. 12, 2006); *Neuberger Berman*, 230 F.R.D. at 421. When moving to compel, the deposing party must direct the court's attention to specific questions and objections in the record; requesting an "advisory opinion as to the propriety and scope of the questioning of" a witness, *Pritchard*, 2006 WL 2927852, at *4, "mere notions of questions which might be posed," *Modern Drop Forge Co.*, 1997 WL 120572, at *4, or "unspecified questions on broad topics," *MacKenzie-Childs LLC*, 262 F.R.D. at 252, does not suffice. The party asserting the privilege must then meet its burden of proving the communications at issue are privileged when responding to the motion to compel. *See Mirlis*, 249 F. Supp. 3d at 616; *Neuberger Berman*, 230 F.R.D. at 421–22. The court must then assess the privilege objections on a question-by-question basis. *See Modern Drop Forge Co.*, 1997 WL 120572, at *3; *Kirkpatrick v. City of Oakland, Cal.*, 20-cv-05843-JSC, 2021 WL 8892955, at *1 (N.D. Cal. Oct. 20, 2021); *Armada (Singapore) Pte Ltd.*, 160 F. Supp. 3d at 1070–71. If the court decides any objections were improper, it may order the witness be re-deposed. *Neuberger Berman*, 230 F.R.D. at 421.

This approach gives the court a concrete record of actual questions and objections in their proper context to review when resolving a dispute rather than hypothetical questions or subjects presented in a vacuum. *Modern Drop Forge Co.*, 1997 WL 120572, at *4; *Pritchard*, 2006 WL 2927852, at *3. It is simply not workable for a court to "attempt[ ] to evaluate theoretical questions

10

Case 3:23-cv-00431   Document 337   Filed 04/03/25   Page 10 of 20 PageID #: 5950

which *might* be posed" to a witness, *Modern Drop Forge Co.*, 1997 WL 120572, at *2, because a court "cannot be sure of whether a particular question calls for privileged information until the questions are asked," *Armada (Singapore) Pte Ltd.*, 160 F. Supp. 3d at 1070. To do so would require a court to essentially guess "what the line of questioning or the objections to that line will be." *See Thomas*, 2010 WL 1343789, at *4; *Pritchard*, 2006 WL 2927852, at *3.

The Special Master therefore will not order that Revance may question Mr. Chan and Mr. Huff "regarding" or "about" certain topics in the abstract. Instead, the Special Master addresses each portion of the deposition transcripts that Revance identifies in Exhibit 1, sustaining or overruling specific objections to specific questions as appropriate. As explained in more detail below, the Special Master finds that, even assuming without deciding that the attorney-client privilege protects some of the communications relating to the information sought in the disputed questions, the questions at issue largely ask for non-substantive, foundational information that Revance is entitled to seek to evaluate Allergan's privilege assertions.

### C. Deposition of Derek Chan

Before addressing specific questions asked of Mr. Chan, the Special Master addresses Allergan's argument that many of its objections were proper because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That is incorrect. "[T]he mere presence of counsel at a meeting does not make all communications during the meeting privileged." *Sprint Corp.*, 258 F.R.D. at 444. And "[n]ot every communication between an attorney and client is privileged." *Id.* at 443. Each

11

communication to be shielded from disclosure must "involve the requesting or giving of legal advice." *Id.* Communications about non-substantive, underlying facts not involving the requesting or giving of legal advice are therefore not privileged regardless of counsel's presence on the call or whether the communication was made from attorney to client or vice versa. *See id.*

■ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That is non-substantive, underlying information relevant to the existence and waiver of the alleged privilege, specifically ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439.

■ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That is non-substantive, underlying information relevant to the existence of the alleged privilege, specifically ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Upjohn*, 449 U.S. at 394; *Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439.

■ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▉▉▉▉▉▉▉▉▉▉▉▉ These questions seek non-substantive, underlying information relevant to the existence of the alleged privilege, specifically ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See Upjohn*, 449 U.S. at 394; *Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Allergan cites no authority for the proposition that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Though Revance refers to this portion of the transcript in its list in Exhibit 1, there is no objection in this portion of the transcript to rule on. Mr. Chan answered the question asked in this

13

portion of the transcript.

■ █████████████████████████████████
████████████████████████████████████████
████████████████████████████████ That is non-substantive, underlying information unrelated to the requesting or giving of legal advice. *See Donovan*, 755 F.2d at 1219.

■ █████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████ Allergan may only claim privilege over discussions with an employee about activities that occurred, or information obtained, during Mr. Chan's employment with Allergan, not with another employer. *See Asia Pulp & Paper Co.*, 232 F.R.D. at 112 ("Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained *during the course of employment*.") (emphasis added); *Peralta*, 190 F.R.D. at 41 (conversations beyond the employee's "activities within the course of her employment with the defendant" were not privileged). ████████████████
████████████████████████████████████████

■ █████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████ The general subject matter of putatively

14

privileged communications is relevant to the privilege's existence, specifically whether the communications relate to the requesting or giving of legal advice or concern matters within the scope of an employee's employment. *See Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439. Privilege objections have merit, however, when questions about a putatively privileged discussion's subject matter become sufficiently specific as to reveal the discussion's substantive content, so the Special Master's overruling of Allergan's privilege objection applies only to questions seeking the conversation's general subject matter.

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████ Although some courts have held that some actions a client takes in response to an attorney's advice may be protected by attorney-client privilege, not every such action is protected—only those that would indirectly reveal the substance of privileged communications. *See Broadbent*, 2025 WL 385101, at *16; *Hudock*, 2019 WL 5692290, at *4; *Oasis Int'l Waters*, 110 Fed. Cl. at 101; *Schudmak*, 2007 WL 9778168, at *3. ████████████████████████████████
████████████████████████████████████████ The simple fact that an action is taken after a communication with counsel does not necessarily reveal the contents of that communication; there may have been no legal advice or direction in that communication at all, and even if there was, the recipient may have disregarded it.

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

15

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ That is non-substantive, underlying information not involving the requesting or receiving of legal advice. *See Donovan*, 755 F.2d at 1219.

▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆ That is non-substantive, underlying information not involving the requesting or receiving of legal advice. *See Donovan*, 755 F.2d at 1219.

D.   **Deposition of Roger Huff**

▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ That is non-substantive, underlying information not involving the requesting or receiving of legal advice. *See Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439.

▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆ That is non-substantive, underlying information relevant to the existence of the alleged privilege, including whether the communication related to the requesting or giving of legal advice. *See Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439.

▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Although some

courts have held that the attorney-client privilege protects some actions a client takes in response to an attorney's advice, not every such action is protected—only those that would indirectly reveal the substance of privileged communications. *See Broadbent*, 2025 WL 385101, at *16; *Hudock*, 2019 WL 5692290, at *4; *Oasis Int'l Waters, Inc.*, 110 Fed. Cl. at 101; *Schudmak*, 2007 WL 9778168, at *3. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ But the simple fact that an action is taken after a communication with counsel does not necessarily reveal the contents of that communication; there may have been no legal advice or direction in that communication at all, and even if there was, the recipient may have disregarded it. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█ ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ The existence and creator of an allegedly privileged document are non-substantive, underlying information not involving the requesting or receiving of legal advice. *See Donovan*, 755 F.2d at 1219.

█ ██████████████████████████████

████████████████████████████████████████████

17



That information is non-substantive, underlying information not involving the requesting or receiving of legal advice. *Donovan*, 755 F.2d at 1219.



Allergan's arguments about these objections suffer the same

---
6

deficiencies as those discussed in § II(D)(iii) of this Order, *supra*.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That information is non-substantive, underlying information relevant to the existence of the alleged privilege, specifically whether any party to that communication was an attorney.[7] See *Donovan*, 755 F.2d at 1219; *Sprint Corp.*, 258 F.R.D. at 439.

### III. Conclusion

In accordance with the foregoing, the Special Master hereby **ORDERS** that:

1. The relief requested in Exhibit 1 of the parties' January 13, 2025, Joint Submission to the Special Master is **GRANTED in part** and **DENIED in part** as follows:

    a. Allergan's objections to all the questions Revance asked Mr. Chan and Mr. Huff in their depositions identified in Exhibit 1 and discussed above are **OVERRULED**.

    b. Revance's request for an order that Mr. Chan and Mr. Huff must answer questions "regarding" or "about" certain topics is **DENIED**.

    c. Revance's request for an order that it may re-depose Mr. Chan and Mr. Huff is **GRANTED**.

2. The parties **SHALL** adhere to the following procedure relating to the re-depositions of Mr. Chan and Mr. Huff:

    a. Revance shall re-depose Mr. Chan and Mr. Huff on a date and in a location mutually agreeable to the parties within the confines of the applicable Case Management Order. Revance may ask Mr. Chan and Mr. Huff the questions discussed in this Order that Allergan previously instructed Mr. Chan and Mr. Huff not to answer. Revance may also ask any follow-up questions reasonably related to the subject matter of the questions discussed in this Order. Allergan may object to any follow-up questions Revance asks Mr. Chan and Mr. Huff if it has a sufficient basis for its privilege assertion.

---

[7] It is unclear to the Special Master how this communication could be privileged since ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

19

b. If the parties reach an impasse about privilege assertions during the re-depositions of Mr. Chan and/or Mr. Huff, the parties shall provide the Special Master with a joint statement briefing the parties' respective positions within fourteen (14) days of the deposition. Revance shall serve its portion of the joint statement on Allergan within seven (7) days of the deposition, and Allergan shall serve its response on Revance within seven (7) days of service of Revance's portion of the statement. The parties shall brief the issues in accordance with this Order, including by assessing any disputed lines of questioning on a question-by-question basis.

3. The Special Master has filed all the briefing and exhibits he has reviewed in conjunction with this Order. The Special Master has filed several of those items under seal because the parties designated them "confidential." The Special Master has also redacted certain portions of the publicly filed version of this Order to accommodate the parties' confidentiality designations, and he has filed an unredacted version of this Order under seal. Within fourteen (14) days of the entry of this Order, any party who desires for any material filed under seal in conjunction with this Order to remain under seal **SHALL** file a motion to seal with the Court pursuant to Local Rule 5.03.

4. Pursuant to paragraph three of the Court's Order Modifying Case Management Order and Granting Request for the Appointment of a Special Master, the parties have twenty-one (21) days from the date of entry of this Order to file objections or a motion to adopt or modify any of the Special Master's rulings in this Order.

**IT IS SO ORDERED.**

Signed April 3, 2025.

>*/s Todd Presnell*
> Todd Presnell
> Special Master